STATE OF NORTH CAROLINA v. GRANVILLE L. HENDRICKSON, Defendant

No. COA95-1062

(Filed 15 October 1996)

**1. Evidence and Witnesses § 653 (NCI4th)— cocaine—motion to suppress—findings—transposed names—harmless error**

There was only harmless error in the denial of defendant's motion to suppress cocaine seized from his person in an airport where the trial court found that defendant's bag had been seized by Agent Weis when it was really Agent Black who seized the bag. The trial court inadvertently transposed the names of the agents.

**Am Jur 2d, Motions, Rules, and Orders § 26.**

**2. Searches and Seizures § 80 (NCI4th)— cocaine—airport stop—reasonable suspicion**

The trial court did not err in denying defendant's motion to suppress cocaine seized from his person in an airport by concluding that SBI agents had reasonable suspicion based on articulable facts that defendant was engaged in criminal activity at the time of seizure where SBI agents identified defendant from a tip and the drug courier profile, they suspected defendant of concealing contraband in his crotch, they attempted to seize his bag

for a drug dog sniff and defendant attempted to walk away with the bag, an agent said "What's this?" and reached for defendant's crotch, defendant attempted to flee, and cocaine was removed from defendant's crotch after he was subdued. All of the facts known to the narcotics agents at the time of the seizure, taken as a whole, formed a sufficient basis for a reasonable, articulable suspicion that this particular defendant was transporting narcotics.

**Am Jur 2d, Searches and Seizures §§ 70, 71, 78.**

**Law enforcement officer's authority, under Federal Constitution's Fourth Amendment, to stop and briefly detain, and to conduct limited protective search of or "frisk," for investigative purposes, person suspected of criminal activity—Supreme Court cases. 104 L. Ed. 2d 1046.**

3. **Arrest and Bail § 69 (NCI4th)— drug courier profile— object under clothes—flight—probable cause**

SBI agents had probable cause to arrest defendant for trafficking in cocaine where the evidence reveals that the agents determined that defendant conformed to the drug courier profile; the agents confirmed by examining defendant's identification that he was the person about whom they had received a tip; defendant made prolonged eye contact with the officers after deboarding the plane and quickly heading towards an airport exit; the agent noticed a round, rigid cookie shaped object in the lower abdomen under defendant's clothes while asking for defendant's identification; the agents were aware of defendant's past criminal conduct; and defendant attempted to flee when the agents seized his bag and again when they tried to arrest him.

**Am Jur 2d, Arrest §§ 9, 39, 42; Searches and Seizures §§ 70, 71.**

**Propriety of stop and search by law enforcement officers based solely on drug courier profile. 37 ALR5th 1.**

Appeal by defendant from order entered 20 April 1995 by Judge Jack Thompson in Wake County Superior Court. Heard in the Court of Appeals 15 May 1996.

On 15 August 1994, Special Agent William Weis with the State Bureau of Investigation (SBI), was working drug interdiction at the

Raleigh-Durham Airport in Raleigh, North Carolina with SBI Agent Bruce Black. Agent Weis has worked for the SBI since 1978 and has worked with the narcotics section since 1987. He has worked on over 260 drug interdiction cases. Agent Black has experience with 200-300 drug interdiction cases and testified substantially the same as Agent Weis as to what narcotics agents look for in attempting to intercept drug couriers.

Agent Weis testified that from his experience he has learned that drug couriers carry contraband in particular ways. In general, when carrying less than 10 ounces a male courier will carry it in his crotch area. On 15 August 1995, Weis received information, a tip, that defendant, Granville Hendrickson was traveling on American Airlines flight 863 from New York to Raleigh. Granville Hendrickson had purchased a one-way ticket with cash one hour before the flight and he had not checked any luggage. Weis confirmed the information through American Airlines reservations. Prior to the arrival of the flight Agent Black made inquiries on the U.S. Custom's Computer and the FBI's computer about Granville Hendrickson. The Customs computer showed that defendant had recently made a trip from North Carolina to Puerto Rico. Puerto Rico is also known by agents to be a source area for cocaine. The FBI computer check showed that he had been convicted for possession of stolen property in Goldsboro, North Carolina.

Before the flight arrived the agents positioned themselves near the arrival gate and watched defendant get off the flight. As defendant walked into the gate, he made prolonged eye contact with Agent Weis and stared at two other officers. He walked at a rapid pace near the left hand wall and against the regular flow of pedestrian traffic towards the airport exit. Defendant made eye contact several more times with the agents and he put his right hand in his pants pocket in such a manner as it looked like he was reaching towards the center of his body and grabbing something and lifting it up as he walked. Defendant exited the airport terminal building and walked towards the taxi stand. Weis and Black approached him, identified themselves as officers, and asked if they could see his airline ticket. He responded that he did not have a ticket and he proceeded to hail a taxi. The agents then asked to see some identification and as he turned to get his passport out of his bag Weis noticed that defendant's nylon jogging pants pulled tight across his lower abdomen area revealing a round, cookie shape that appeared very rigid. Weis believed the object to be crack cocaine. The agents then asked

defendant if he had anything on his person or in his bag that he should not have and he responded no. Weis asked defendant if they could look in his bag and defendant again said no. Weis then seized the bag and told defendant that they were going to hold his bag so that a drug dog could sniff it for contraband. Defendant tugged on the bag as if he was not going to turn it over to the agents and attempted to walk away from them. As defendant was attempting to leave, Weis reached towards defendant's lower abdomen area and asked him "what's this?" Weis felt the bulge that he had seen earlier. The bulge was hard and it confirmed Weis' suspicions. Defendant attempted to flee and the agents subdued him. Defendant was taken to a police substation at the airport. After defendant was arrested Weis removed cocaine from defendant's crotch and found a bag of crumbled crack cocaine in defendant's pants pocket.

Defendant was charged with two counts of trafficking more than 200 but less than 400 grams of cocaine, by transportation and by possession. Defendant waived his right to a probable cause hearing and the Grand Jury of Wake County returned true bills of indictment on these charges 10 January 1995. On 6 February 1995, defendant filed a written waiver of arraignment, reserving his right to file a motion to suppress evidence. On 13 February 1995, defendant filed a motion to suppress evidence obtained in violation of his state and federal constitutional rights. Defendant appeals from the order denying his motion to suppress evidence.

*Attorney General Michael F. Easley, by Special Deputy Attorney General Robert T. Hargett, for the State.*

*Law Offices of George W. Hughes, by George W. Hughes and John F. Oates, Jr., for defendant appellant.*

ARNOLD, Chief Judge.

[1] Defendant first assigns error to the trial court's denial of his motion to suppress because the findings of fact are not supported by competent evidence in the record. We disagree.

"This Court must determine whether these findings of fact support the trial court's conclusions of law, and if so, the trial court's conclusions of law are binding on appeal." *State v. West*, 119 N.C. App. 562, 565, 459 S.E.2d 55, 57 (citing *State v. Brooks*, 337 N.C. 132, 140-141, 446 S.E.2d 579, 585 (1994)), *disc. review denied*, 341 N.C. 656, 462 S.E.2d 524 (1995).

Defendant specifically assigns error to Finding of Fact 13:

13. Upon refusal to allow agent Weiss [sic] to look into the bag the Defendant was carrying, agent Weiss [sic] seized the bag from the Defendant and informed the Defendant that drug sniffing dog would be called to check out the bag.

Defendant is correct that the trial judge erroneously found in Finding of Fact 13 that Agent Weis seized defendant's bag when it was really Agent Black who seized the bag. However, we find this to be harmless error. The trial court heard all of the evidence and inadvertently transposed the names of the agents in the order denying defendant's motion to suppress.

[2] Defendant's second assignment of error is that the trial court erred by concluding that the agents had reasonable suspicion based on articulable facts that defendant was engaged in criminal activity at the time of seizure and that they had probable cause to arrest defendant. We disagree with the defendant and find that reasonable suspicion and probable cause existed.

Defendant argues that the agents conducted an unreasonable seizure of him which exceeded the scope of a permissible stop and frisk procedure, and that the arrest was not supported by probable cause.

We first address whether defendant was seized within the meaning of the Fourth Amendment. The United States Supreme Court created a limited exception to the general rule that seizures of a person require probable cause in *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). "That approach, adopted by our Supreme Court in *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779 (1979), 'requires only that the officer have a "reasonable" or "founded" suspicion as justification for a limited investigative seizure.' " *State v. Perkerol*, 77 N.C. App. 292, 297, 335 S.E.2d 60, 64 (1985), *disc. review denied*, 315 N.C. 595, 341 S.E.2d 36 (1986).

Furthermore, the United States Supreme Court detailed a reasonableness requirement for seizures after its decision in *United States v. Mendenhall*, 446 U.S. 544, 64 L. Ed. 2d 497, *reh'g denied*, 448 U.S. 908, 65 L. Ed. 2d 1138 (1980).

While the court has recognized that in some circumstances a person may be detained briefly without probable cause to arrest him,

any curtailment of a person's liberty by the police must be supported at least by a reasonable and articulable suspicion that the person seized is engaged in criminal activity.

*Reid v. Georgia,* 448 U.S. 438, 440, 65 L. Ed. 2d 890, 893-894 (1980). This standard "requires that the court examine both the articulable facts known to the officers at the time they determined to approach and investigate the activities of [defendant], and the rational inferences which the officers were entitled to draw from those facts." *State v. Casey,* 59 N.C. App. 99, 107, 296 S.E.2d 473, 478 (1982). The circumstances leading to the seizure "should be viewed as a whole through the eyes of a reasonable and cautious police officer on the scene, guided by his experience and training." *State v. Thompson,* 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied,* 444 U.S. 907, 62 L. Ed. 2d 143 (1979).

Airport search cases based on "drug courier profiles" must be reviewed on a case by case basis. *State v. Grimmett,* 54 N.C. App. 494, 498, 284 S.E.2d 144, 148 (1981), *disc. review denied,* 305 N.C. 304, 290 S.E.2d 706 (1982). Likewise, the Supreme Court of the United States reversed the Ninth Circuit in *United States v. Sokolow,* 490 U.S. 1, 6, 104 L. Ed. 2d 1, 9-10 (1989), because the Ninth Circuit's approach was "contrary to the case-by-case determination of reasonable articulable suspicion based on all the facts."

A "reasonable, articulable suspicion" is not based on factors that "taken as a whole, could easily be associated with many travelers and would therefore subject them to . . . intrusions into their privacy." *State v. Odum,* 119 N.C. App. 676, 681, 459 S.E.2d 826, 829 (1995) (Greene, dissenting), *rev'd,* 343 N.C. 116, 468 S.E.2d 245 (1996). A trained narcotics agent forms a reasonable, articulable suspicion that an individual is a drug courier on the basis of identifiable behaviors that are usually associated with drug couriers as opposed to law abiding citizens. This Court must review all the facts known to the narcotics agents at the time of the seizure to determine whether, taken as a whole, those factors formed a sufficient basis for a reasonable, articulable suspicion that this particular defendant was transporting narcotics. *Id.*

The facts in the present case show that Agent Weis received a tip from a source that the following would occur: (1) A man named Granville Hendrickson would be flying in on American Airlines Flight 863 from New York, a source city for narcotics, to Raleigh-Durham Airport; (2) he checked no bags and traveled only with a small black

gym bag; (3) he purchased his ticket within an hour before departure of his flight from LaGuardia Airport, and (4) he purchased a one-way ticket with cash. Agent Weis confirmed this information with American Airlines reservations in Raleigh and Agent Black ran computer background checks on defendant in the U.S. Customs and F.B.I. computers. The agents discovered that defendant had made a recent trip to Puerto Rico, also a known source for drugs, and that he had a prior conviction for possession of stolen property in Goldsboro, North Carolina. Adding to these factors was that once defendant arrived at the airport: (1) He made prolonged eye contact with Agents Weis and Black and Alston and appeared to be nervous; (2) upon making eye contact he began to walk at a rapid pace through the airport against the regular flow of traffic; (3) he made eye contact twice with Agent Weis while on the escalator to go to the baggage claim area; and (4) Agent Black observed him put his right hand in the pocket of his nylon jogging pants in such a way as it looked like he was reaching towards the center of his body and grabbing something and lifting it up as he walked. Other relevant factors in this case are: (1) Agent Weis has worked with the narcotics division of the SBI since 1987, started with the SBI in 1978 and has worked on over 260 drug interdiction cases; (2) Agent Black has worked with the narcotics division of the SBI since 1988, started with the SBI in 1977 and has worked on approximately 200 to 300 drug interdiction cases; (3) both agents testified that there are two main ways that drug couriers carry drugs, either on their person, in the crotch area if a male courier, or in their baggage; (4) the agents identified Miami, the Southern Florida area, the New York metropolitan area, Los Angeles and Southern Texas as being main source cities for North Carolina; and (5) Agent Black testified that New York City is a primary source city for North Carolina and that 90 percent of drug interdiction arrests made are of people traveling from New York to the Raleigh-Durham Airport.

When deciding to approach defendant the agents took all of the above factors, the "totality of the circumstances," into consideration. When asked for his identification, defendant turned to open his duffle bag. This caused his jogging pants to pull a little tighter across his crotch area and allowed Agent Weis to notice a round, cookie shape that appeared very rigid under the clothes covering defendant's lower abdomen area. Agent Weis noted that this looked unnatural and he believed it to be contraband. At this time, the agents had a reasonable, articulable suspicion to seize defendant's bag and to hold it for a drug dog sniff. Up until the time that Agent Black seized defendant's

bag, no seizure had occurred. Defendant was still free to leave and he even hailed a taxi during his conversation with the agents. Thus we find that based on the totality of the circumstances summarized above, the agents had a reasonable, articulable suspicion to stop defendant and to seize his bag.

**[3]** The final issue to be addressed is whether the agents had the requisite probable cause to arrest defendant. With regards to the issue of probable cause, the North Carolina Supreme Court stated that a reviewing court's role "is to determine whether the officer has acted as a man of reasonable caution who, in good faith and based upon practical consideration of everyday life, believed the suspect committed the crime for which he [i]s later charged." *State v. Zuniga*, 312 N.C. 251, 262, 322 S.E.2d 140, 147 (1984).

> Factors which a court may consider in determining whether probable cause to arrest exists include: (1) the time of day; (2) the defendant's suspicious behavior; (3) flight from the officer or the area; (4) the officer's knowledge of defendant's past criminal conduct, and . . . one's reputation for relevant criminal conduct may contribute to probable cause.

*State v. Watson*, 119 N.C. App. 395, 399, 458 S.E.2d 519, 523 (1995) (citations omitted). The evidence presented in the instant case reveals: (1) The agents determined that defendant conformed to the drug courier profile; (2) the agents confirmed by examining defendant's identification that he was Granville Hendrickson, the same person about whom they had received a tip; (3) defendant made prolonged eye contact with the officers after deboarding the plane and quickly heading towards an airport exit; (4) while being asked for his identification, Weis noticed a round, rigid cookie shaped object under the clothes covering defendant's lower abdomen; (5) the agents were aware of defendant's past criminal conduct; and (6) defendant attempted to flee when the agents seized his bag and again when they tried to arrest him. Accordingly, we find that the agents had probable cause to arrest defendant.

No error.

Judges JOHN and McGEE concur.