STATE OF NORTH CAROLINA v. PAUL DENNIS McCLENDON, JR.

No. COA97-863

(Filed 4 August 1998)

### 1. Search and Seizure— traffic stop—probable cause

The traffic stop of a defendant ultimately charged with possessing more than fifty pounds of marijuana did not violate his constitutional rights where the evidence supports the trial court's findings that both a mini-van and the station wagon driven by defendant were traveling in excess of the posted speed limit and that defendant was following the mini-van too closely. It is evident that the trooper had probable cause to stop defendant's vehicle and the stop was not inconsistent with the Fourth Amendment, even though a reasonable officer may not have made the stop.

### 2. Search and Seizure— traffic stop—initial investigation—permissible scope

In a prosecution for possession of more than fifty pounds of marijuana, the continued restrictions on defendant's departure beyond the scope of a traffic stop were not unreasonable where the questioning engaged in by the trooper was legitimately aimed at confirming defendant's identity in light of the fact that he was unable to produce the vehicle's registration and was unable to identity the name of the person listed on the vehicle's title despite the fact that the address on the title was the same as that on his driver's license. The questions concerning defendant's travels and his relationship with the driver of a mini-van which he had been following closely and which was also stopped were reasonably related to the purpose of issuing defendant a warning ticket for following too closely.

### 3. Search and Seizure— traffic stop—detention beyond warning ticket—reasonable suspicion or probable cause

In a prosecution for the possession of more than fifty pounds of marijuana, the detention of defendant subsequent to the issuance of a warning ticket was supported by reasonable suspicion or probable cause in that defendant was unable to produce a registration card for the vehicle; defendant provided inconsistent information about the ownership of the vehicle, having indicated that it was owned by his girlfriend, whose name was

STATE v. McCLENDON

[130 N.C. App. 368 (1998)]

different from the name on the title; the trooper was of the opinion that defendant appeared nervous; another trooper observed that defendant was fidgety, vague and evasive when answering questions; defendant failed to make eye contact when being questioned about the station wagon, its ownership, and his girlfriend; there was information that both defendant's station wagon and a mini-van in front of him had come from Texas; the travel information given by both defendant and the driver of the mini-van was vague, and appeared unreasonable; and it was the opinion of one trooper that the two vehicles were traveling together with the mini-van as a decoy vehicle for defendant's vehicle. While any one of these factors may not be sufficient to show a reasonable suspicion, no violation of defendant's constitutional rights occurred on the totality of the circumstances.

Judge WYNN dissenting.

Appeal by defendant from judgment entered 14 October 1996 by Judge Thomas W. Ross in Guilford County Superior Court. Heard in the Court of Appeals 2 April 1998.

*Attorney General Michael F. Easley, by Assistant Attorney General William B. Crumpler, for the State.*

*Clifford, Clendenin, O'Hale & Jones, LLP, by Locke T. Clifford and Walter L. Jones, for defendant-appellant.*

WALKER, Judge.

The defendant was indicted on 10 June 1996 on charges of trafficking and conspiracy to traffick by transporting and possessing more than fifty pounds but less than one hundred pounds of marijuana. On 19 August 1996, the defendant filed a motion to suppress evidence. After a hearing on the matter, the trial court denied the motion. Subsequently, on 14 October 1996, the defendant pled guilty pursuant to a plea agreement in which he reserved the right to appeal the denial of his suppression motion. The charges were consolidated and the trial court sentenced the defendant to 25-35 months in prison and imposed a $15,000.00 fine.

The evidence at the suppression hearing tended to show the following: On 21 February 1996, Trooper T.L. Cardwell (Cardwell), a member of the North Carolina Highway Patrol, observed the defendant driving a station wagon on Interstate 85 in Guilford County at a

speed of approximately 72 miles per hour in a 65 miles per hour speed limit zone and following closely behind the mini-van in front of him. Cardwell had been involved in drug interdiction activities since 1987.

During the afternoon hours that day, Cardwell pulled up in the lane beside the defendant and made eye contact with the defendant who decreased his speed. Cardwell then pulled up beside the driver of the mini-van and made eye contact. The driver of the mini-van, however, did not slow down and continued speeding. From his observations, Cardwell determined that the two vehicles were traveling together. At this point, Cardwell radioed Trooper Brian Lisenby (Lisenby), who was in the vicinity, for assistance in stopping both vehicles. Both vehicles were stopped between 4:05-4:10 p.m.

Cardwell questioned the driver of the mini-van, who produced a Texas driver's license and identified himself as Tony Contreras (Contreras). Contreras offered no explanation for his speeding; however, he told Cardwell that the mini-van was owned by his brother who he was meeting at the Greensboro airport. Contreras explained that his brother would soon be opening a furniture store in Texas and that they were going to visit area furniture stores looking for suppliers. When asked, Contreras could not name any of the stores that he and his brother were supposed to visit nor could he explain why he was driving his brother's mini-van while his brother was flying from Texas to Greensboro. Contreras also denied that he was traveling with the defendant. Cardwell issued Contreras a warning ticket for speeding and obtained a signed consent form authorizing him to search the mini-van. The conversation between Cardwell and Contreras took approximately ten minutes.

Meanwhile, Lisenby questioned the defendant who produced his Tennessee driver's license and a title to the vehicle he was driving. Lisenby noticed that the defendant's hand was trembling and that defendant was unable to locate the registration to the station wagon. The title to the vehicle was in the name of Jema Ramirez. Lisenby noticed that the title contained the same address as the defendant's driver's license. Defendant told Lisenby that the station wagon belonged to his girlfriend; however, when asked what his girlfriend's name was, the defendant did not respond to the question. Instead, he made a nervous chuckle, began fidgeting, and looked straight ahead instead of making eye contact with Lisenby. At this point, Lisenby asked the defendant to step out of the vehicle and come back to his

patrol car. Before the defendant exited his vehicle, Lisenby asked whether he was traveling with the mini-van stopped by Cardwell and the defendant replied that he was not and that he did not know the driver of the mini-van.

Once in the patrol car, Lisenby asked the defendant where he was traveling from and what his destination was. The defendant told him that he had come from Georgia and was going to Greensboro. He stated that he was just passing through Georgia and never gave a definite location in Greensboro. Lisenby testified that as the conversation progressed, the defendant became more nervous and was breathing heavily. His eyes were darting back and forth, he would not make eye contact, and he could not sit still. At one point, Lisenby inquired as to whether he was okay.

Lisenby then ran a check on the defendant's driver's license and on the registration of the vehicle. He ascertained that the address for the vehicle's registration corresponded with the address on the defendant's license and the title. Lisenby again asked the defendant for his girlfriend's name and for the name on the vehicle's registration. The defendant glanced at Lisenby, looked down at the floorboard, took a deep breath and said, "Anna." Lisenby responded, "Anna?" The defendant then said, "I think so" or something to that effect. The name "Anna" did not appear on the title and the defendant gave no other information about Anna.

While Lisenby was talking with the defendant, he radioed to Cardwell and advised him of the information obtained from the defendant. Cardwell instructed Lisenby to issue the defendant a warning ticket for speeding and for following too close. Lisenby issued the warning ticket and then asked the defendant whether there were any weapons or narcotics in the car. Lisenby noticed that as he asked these questions, the defendant would chuckle nervously and sigh deeply after Lisenby asked each question. Defendant also looked down at the floorboard, took a deep breath and mumbled "No" in response to the questions. Lisenby then asked if he could search the defendant's vehicle and the defendant refused.

Upon the defendant's refusal to consent to a search of the vehicle, Lisenby got out of his patrol car and related this information to Cardwell. Cardwell then got into Lisenby's patrol car and spoke with the defendant.

Upon being asked by Cardwell, the defendant denied he was traveling with the mini-van. He stated that he was going to Greensboro

for a couple of days and then back home to Tennessee. He further stated that he had spent the night in Atlanta after having been in Houston for a couple of days. The defendant appeared to Cardwell to be nervous as he was breathing rapidly and sweat was forming on his forehead. Cardwell also noted that the defendant was fidgety, vague and evasive when answering questions. He then advised the defendant that he intended to call a trained dog for an external sniff of the station wagon.

Cardwell contacted Detective Johnnie Ferrell of the High Point Police Department at approximately 4:30 p.m. to request assistance. Ferrell arrived at the scene with Shadow, a narcotics detection dog, around 4:45 p.m. Shadow began to sniff and alerted to an odor of controlled substances by scratching and biting at the rear of the defendant's vehicle. Cardwell advised the defendant that Shadow had indicated the presence of controlled substances and that Shadow would be placed inside the vehicle.

Shadow then did an internal sniff of the car and alerted the officers to the rear cargo floor where a spare tire is usually kept. Cardwell searched this area and found marijuana. Lisenby advised the defendant of his rights using a Miranda rights form, which was signed at 4:55 p.m.

The trial court made findings consistent with the aforementioned facts and subsequently concluded the following:

First, Court would conclude that Sgt. Cardwell had both reasonable and articulable suspicion to stop the white mini van and white Chevrolet station wagon, having observed them proceeding on Interstate 85 highway at a speed greater than the posted speed limit and had an additional basis for the stop of the station wagon that it was following too closely behind the van. That, indeed, Sgt. Cardwell had probable cause to stop the vehicles for the purpose of the traffic violations observed. That after the stop of the vehicles, that the defendant was detained in connection with the valid traffic stop until such time as he was given a warning ticket. That he was detained thereafter for a period of time of at least 15 to 20 minutes before probable cause was found—before probable cause existed to search the defendant's vehicle. That Court would further conclude that Sgt. Cardwell had reasonable and articulable suspicion to detain the defendant for the period of time after the warning ticket was issued until the external search of the vehicle by the canine Shadow. That the reasonable and articula-

ble suspicion was based on the following factors, and is judged under the totality of the circumstances. That the factors included the opinion of Sgt. Cardwell that the van and station wagon were traveling in tandem, and that the van appeared to be a decoy vehicle for the station wagon. That that was a reasonable opinion based upon Sgt. Cardwell's training and experience in drug interdiction. That as an additional factor, Trooper Cardwell knew prior to the period of detention beginning, following the issuing of the warning ticket, that the defendant had been unable to produce a registration for the vehicle. That the defendant had provided inconsistent information about the ownership of the vehicle, having indicated it was owned by his girlfriend, whose name he provided to be Anna, which was different from that appearing on the title. That the defendant had appeared nervous, breathing heavy, with sweat forming on his forehead. That he would not make eye contact with Trooper Lisenby during questions placed to him about the ownership of the vehicle. And further, Sgt. Cardwell knew that both the vehicle operated by the defendant and the van operated by Mr. Contreras had come from Texas based upon the information provided by Mr. Contreras and the defendant. That Sgt. Cardwell had information provided to him by Mr. Contreras of his purpose of his travel and his travel plans, and that the information provided was vague and not specific. And further, Sgt. Cardwell knew that the defendant had provided information to Trooper Lisenby with regard to his travel, and that information provided was not specific and appeared unreasonable. That further, Sgt. Cardwell knew that the defendant had conducted himself in a nervous fidgety manner, failing to make eye contact upon being questioned about the vehicle, about the ownership of the vehicle, about his travel itinerary, and about his girlfriend. Further, the Court would conclude that the stop of the defendant's vehicle on February 21, 1996 on Interstate 85 was reasonable and based upon articulable suspicion of, and indeed, probable cause of a violation of the traffic laws. That his detention thereafter exceeded the scope of a normal traffic detention. That the scope of the additional detention of some 20 minutes was reasonable and was based on articulable suspicion of additional criminal activity. That based upon the conduct and the training and experience of Officer Ferrell and the canine Shadow, that Trooper Cardwell, the Court concludes, had probable cause to search the vehicle after the canine Shadow had alerted on the exterior of the vehicle. That the search of the vehicle and seizure

of items found therein was a reasonable search and seizure conducted after a reasonable detention, not in violation of the Constitution of the United States or the Constitution of the State of North Carolina.

[1] The defendant first argues that the stop of his vehicle, under the pretext of a traffic offense, was in violation of his constitutional rights under both the United States and the North Carolina Constitutions.

The circumstances of the initial stop of the defendant's vehicle are similar to those in this Court's recent opinion in *State v. Hamilton*, 125 N.C. App. 396, 481 S.E.2d 98 (1997). In *Hamilton*, the defendant argued that "the stop of the vehicle in which he was a passenger for the stated purpose of issuing a citation for a seat belt violation was a mere pretext for investigating the defendant for possession of illegal drugs" and thus in violation of the Fourth Amendment. *Id.* at 399, 481 S.E.2d at 100.

This Court cited the United States Supreme Court's decision in *Whren v. United States*, 517 U.S. 806, 135 L. Ed. 2d 89 (1996) which held that "the temporary detention of a motorist upon probable cause to believe that he has violated a traffic law is not inconsistent with the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist." *Id.* at 399, 481 S.E.2d at 100. Therefore, under the United States Constitution, any "ulterior motives" for the traffic stop are immaterial and "the inquiry . . . is no longer what a reasonable officer would do, but instead what the officer could do." *Id.* at 399-400, 481 S.E.2d at 100.

This Court went on to find that in North Carolina "an officer may stop a [vehicle] and issue a citation to any motorist who 'he has probable cause to believe has committed a misdemeanor or infraction.' " *Id. (quoting* N.C. Gen. Stat. § 15A-302(b) (1988)). Thus, we held the officer had probable cause to stop the vehicle in which the defendant passenger was not wearing his seat belt as our statute provides that front seat passengers, 16 years of age or older, are required to wear a seat belt if the vehicle is in forward motion. *Id. See* N.C. Gen. Stat. § 20-135.2A (a) (1993). Moreover, the Court concluded that "[t]he stop of the vehicle was therefore not inconsistent with the Fourth Amendment, even though a reasonable officer may not have made the stop." *Id.*

STATE v. McCLENDON

[130 N.C. App. 368 (1998)]

In the instant case, the evidence supports the trial court's findings that both the mini-van driven by Contreras and the station wagon driven by the defendant were traveling in excess of the posted speed limit in violation of N.C. Gen. Stat. § 20-141 (1993) and that the defendant was following the mini-van too closely in violation of N.C. Gen. Stat. § 20-152 (1993). Therefore, it is evident that Cardwell had probable cause to stop the defendant's vehicle and thus, according to *Hamilton*, the stop was "not inconsistent with the Fourth Amendment, even though a reasonable officer may not have made the stop."

[2] The defendant next argues that even if this Court should find the initial stop of the vehicle was not unreasonable, the continued restrictions on his departure were beyond the scope of the traffic stop and therefore unreasonable.

Generally, " 'the scope of the detention must be carefully tailored to its underlying justification.' " *State v. Morocco*, 99 N.C. App. 421, 427-28, 393 S.E.2d 545, 549 *(quoting Florida v. Royer*, 460 U.S. 491, 500, 75 L. Ed. 2d 229, 238 (1983)). Thus, in the instant case, the initial detention of the defendant by Cardwell and Lisenby must have been tailored to the underlying justification of issuing a warning citation.

A similar issue was discussed in *State v. Hunter*, 107 N.C. App. 402, 420 S.E.2d 700 (1992), *disc. review denied*, 333 N.C. 347, 426 S.E.2d 711 (1993), *overruled on other grounds by State v. Pipkins*, 337 N.C. 431, 446 S.E.2d 360 (1994). There, the defendant was stopped by Trooper Lowry for the purpose of issuing a warning ticket for improper parking. *Id.* at 406, 420 S.E.2d at 703. The defendant argued that the subsequent investigation by Lowry exceeded the scope of the stop. This Court noted that although the scope of the investigation must be tailored to the stop, " 'the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicion.' " *Id.* at 407, 420 S.E.2d at 704 *(quoting Berkemer v. McCarty*, 468 U.S. 420, 439, 82 L. Ed. 2d. 317, 334 (1984).

In *Hunter*, this Court found that Lowry's questions were "legitimately aimed at confirming the defendant's identity particularly in light of the rental contract being in the name of another person." *Id.* The Court then concluded that Lowry's initial investigation was "reasonably related to the purpose of issuing a warning ticket for illegal parking and that asking for permission to search the defendant's vehicle did not exceed the scope of his investigation." *Id.*

Likewise, we find that Lisenby's initial investigation of the defendant in the instant case was reasonably related to the issuance of a warning ticket for speeding and following too closely.

Here, the evidence shows that upon approaching the vehicle driven by the defendant, Lisenby requested his driver's license and vehicle registration. The defendant produced his driver's license, at which time Lisenby noticed that defendant's hand was shaking. The defendant was unable to locate the vehicle's registration but did produce the vehicle's title which contained the name of Jema Ramirez. Lisenby noted, however, that the address on the title and the address on the defendant's license were the same. When Lisenby questioned the defendant about the ownership of the car, he indicated that the car belonged to his girlfriend but did not respond when Lisenby asked him for his girlfriend's name. Lisenby then requested that defendant accompany him to his patrol car while he checked the defendant's license.

Once inside the patrol car, Lisenby again inquired as to who owned the vehicle that defendant was driving. Defendant again appeared nervous, looked straight ahead, made no eye contact with Lisenby and then indicated that the car belonged to his girlfriend. At this time, Lisenby also noticed sweat forming on the defendant's forehead. The defendant finally acknowledged that his girlfriend's name was Anna; however, the name Anna did not appear on the title to the vehicle. Lisenby then advised Cardwell of this information and Cardwell instructed Lisenby to issue the defendant a warning ticket.

We find that the questioning engaged in by Lisenby was legitimately aimed at confirming the defendant's identity in light of the fact that he was unable to produce the vehicle's registration and was unable to identify the name of the person listed on the vehicle's title despite the fact that the address on the title was the same as that on his driver's license. Further, we find the questions concerning the defendant's travels and his relationship with the driver of the mini-van were reasonably related to the purpose of issuing the defendant a warning ticket for following the mini-van too closely. As such, the initial investigation of the defendant by Lisenby did not exceed the permissible scope of his investigation.

[3] Next, the defendant argues that his detention subsequent to the issuance of the warning ticket was unconstitutional as it was not supported by reasonable suspicion or probable cause.

STATE v. McCLENDON

[130 N.C. App. 368 (1998)]

Our Supreme Court in *State v. Watkins*, 337 N.C. 437, 441-42, 446 S.E.2d 67, 69-70 (1994), set out the law concerning investigatory stops as follows:

> The Fourth Amendment protects the "right of the people . . . against unreasonable searches and seizures." U.S. Const. amend. IV. It is applicable to the states through the Due Process Clause of the Fourteenth Amendment. *Mapp v. Ohio*, 367 U.S. 643, 655, 6 L. Ed. 2d 1081, 1090 (1961). It applies to seizures of the person, including brief investigatory detentions such as those involved in the stopping of a vehicle. *Reid v. Georgia*, 448 U.S. 438, 440, 65 L. Ed. 2d 890, 893 (1980). Only unreasonable investigatory stops are unconstitutional. *Terry v. Ohio*, 392 U.S. 1, 9, 20 L. Ed. 2d 889, 899 (1968). An investigatory stop must be justified by 'a reasonable suspicion, based on objective facts, that the individual is involved in criminal activity.' *Brown v. Texas*, 443 U.S. 47, 51, 61 L. Ed. 2d 357, 362 (1979). A court must consider 'the totality of the circumstances—the whole picture' in determining whether a reasonable suspicion to make an investigatory stop exists. *U.S. v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 629 (1981). The stop must be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training. *Terry*, 392 U.S. at 21-22, 20 L. Ed. 2d at 906; *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 779, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979). The only requirement is a minimal level of objective justification, something more than an 'unparticularized suspicion or hunch.' *U.S. v. Sokolow*, 490 U.S. 1, 7, 104 L. Ed. 2d 1, 10 (1989).

We first note that the trial court's ruling on a motion to suppress is afforded great deference upon appellate review as it has the duty to hear testimony and weigh the evidence. *State v. Johnston*, 115 N.C. App. 711, 713, 446 S.E.2d 135, 137 (1994).

As stated above, the trial court concluded that Cardwell and Lisenby had a reasonable, articulable suspicion that defendant was engaged in criminal activity which would justify his detention from the time the warning ticket was issued until the external canine sniff of the vehicle by Shadow. The following factors supported this conclusion: (1) the defendant's inability to produce a registration card for the vehicle; (2) the defendant provided inconsistent information about the ownership of the vehicle he was driving, having indicated

that it was owned by his girlfriend, Anna, which was different from the name on the title; (3) the opinion of Lisenby that the defendant appeared nervous, with sweat forming on his forehead and heavy breathing; (4) the observations of Cardwell that the defendant was fidgety, vague and evasive when answering questions; (5) the defendant failed to make eye contact upon being questioned about the station wagon, its ownership and about his girlfriend; (6) the information that both vehicles had come from Texas; (7) the travel information given by both the defendant and driver of the mini-van was vague, not specific and appeared unreasonable; and (8) the opinion of Cardwell that the two vehicles were traveling together and that the mini-van was a "decoy vehicle" for the defendant's vehicle. Moreover, the trial court concluded that Cardwell's opinion that the mini-van was acting as a "decoy vehicle" was a reasonable one based on his previous training and experience in drug interdiction.

While any one of the enumerated factors alone may not be sufficient to show a reasonable suspicion that the defendant was engaged in criminal activity, we conclude, based on the totality of the circumstances here, the detention of the defendant beyond the issuance of the warning ticket was justified and that no violation of defendant's constitutional rights occurred. *See State v. Hendrickson,* 124 N.C. App. 150, 476 S.E.2d 389 (1996), *appeal dismissed and disc. review improvidently allowed,* 346 N.C. 273, 485 S.E.2d 45 (1997).

We distinguish the instant case from both our Supreme Court's recent case of *State v. Pearson,* 348 N.C. 272, 498 S.E.2d 599 (1998) and this Court's opinion in *State v. Falana,* 129 N.C. App. 813, 501 S.E.2d 358 (1998). In *Pearson,* the Court held that the defendant's nervousness was not significant and that a variance in the statements of the defendant and his fiancée did not show that criminal activity was afoot. *Pearson,* 498 S.E.2d at 601. The circumstances in *Falana* were substantially similar to those in *Pearson* and thus we held the defendant's motion to suppress was improperly denied. Clearly the enumerated factors, as found by the trial court in the instant case, extend well beyond those found in *Pearson* and *Falana* and lead us to conclude that the officers had a reasonable suspicion that the defendant was engaged in criminal activity.

The order of the trial court denying the defendant's motion to suppress is

Affirmed.

**STATE v. McCLENDON**

[130 N.C. App. 368 (1998)]

Judge WYNN dissents.

Judge MARTIN, John C., concurs.

Judge WYNN dissenting.

To further detain a suspect after having performed an initial investigatory stop, an officer must have a reasonable articulable suspicion that criminal activity is afoot. *Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968). Because our Supreme Court in *State v. Pearson*, 348 N.C. 272, 498 S.E.2d 599(1998) and this Court most recently in *State v. Falana*, 129 N.C. App. 813, 501 S.E.2d 358 found that evidence similar to that in the case at hand was insufficient to support a conclusion that the officers were justified in detaining the drivers in those cases, I dissent from the majority's decision in this case.

In *Pearson*, our Supreme Court rejected arguments that the nervousness of the driver and the inconsistent story of his passenger were sufficient grounds for a more intrusive search by troopers. Such factors, the Court concluded, even when considered as a whole, did not warrant a reasonable belief that the driver was armed or dangerous so as to justify a search of his person. In *Falana*, Judge Walker held that neither the demeanor of the driver nor the variances in his fiancé's statements was sufficient to warrant his detention after issuance of the ticket, even if the trooper's suspicions were in fact genuine.

Here, as in *Pearson* and *Falana*, defendant appeared nervous and gave inconsistent statements to the officers. Moreover, his statements to the troopers that the car belonged to his girlfriend whose name did not appear on the vehicle's title, amount to nothing more than the type of inconsistent statement found to be insufficient in *Pearson*. Thus, the only factor that could possibly justify the majority's conclusion that this case "extends well beyond" those two cases was the driver's inability to produce a registration for the vehicle. However, the driver did produce a title to the vehicle that matched the address on his driver's license. Any reasonable suspicions on the ownership of the vehicle were therefore dispelled by the title information. Accordingly, the factors in this case, even when viewed as a whole, do not extend beyond those in *Pearson* and *Falana*.