STATE OF NORTH CAROLINA v. FELIX FISHER

No. COA99-1222

(Filed 29 December 2000)

## 1. Arrest— warrantless search—inconsistent testimony—failure to procure magistrate's signature on citation

The trial court's finding at a suppression hearing that defendant was placed under arrest for driving while license revoked prior to the search of defendant's vehicle was not supported by competent evidence, because: (1) the testimony of two officers contained material inconsistencies in the State's own evidence; and (2) the officers' complete failure to procure a magistrate's signature on the citation indicates that defendant was never arrested.

## 2. Search and Seizure— canine sniff of exterior of car—illegal seizure

The trial court did not err by suppressing evidence of marijuana found as a result of the warrantless search of defendant's vehicle by a canine sniff of the exterior of the car in a public place, because: (1) defendant was never arrested; (2) the officers were not justified in searching defendant's car based upon the issuance of a citation even if the officers may have had probable cause to arrest defendant; (3) the officers did not possess reasonable suspicion based upon objective facts to detain defendant for investigative measures outside the scope of the initial traffic stop; (4) the officers did not obtain any evidence which would justify extending defendant's detention beyond the time it took to investigate the initial traffic stop; and (5) the two factors that one officer knew that the area of the traffic stop was notorious for its drug trade and that defendant was previously involved in drug-related activity standing alone are insufficient to justify detaining an individual for the purpose of conducting a canine sniff or other limited investigative measure outside the scope of the initial stop.

Appeal by State from order granting defendant's motion to suppress entered 13 September 1999 by Judge Clifton W. Everett, Jr. in Superior Court, Craven County. Heard in the Court of Appeals 18 September 2000.

*Attorney General Michael F. Easley, by Assistant Attorney General T. Brooks Skinner, Jr., for the State.*

*Joshua W. Willey, Jr. for defendant-appellee.*

TIMMONS-GOODSON, Judge.

The State, pursuant to section 15A-979(c) of the North Carolina General Statutes, appeals from the trial court's pre-trial order granting Felix Fisher's ("defendant") motion to suppress evidence. Having reviewed the arguments and materials submitted on appeal, we affirm.

The facts, as found by the trial court, are as follows: On 29 November 1998, Investigator John Smith ("Investigator Smith") of the New Bern Police Department's narcotics unit observed a White Chevrolet Blazer, belonging to defendant, parked in an area of New Bern, North Carolina, known for its drug trade. The investigator knew defendant had a reputation for dealing drugs. Investigator Smith did not see defendant at the time, but suspecting that defendant was in the area, he ran a "record check" on defendant, which revealed that his driver's license had been revoked.

On the night of 1 December 1998, while patrolling an area known for its drug trade, Investigator Smith observed defendant driving his Blazer, accompanied by a passenger. Investigator Smith immediately radioed uniformed patrol Officer Ernest Tripp ("Officer Tripp"), also of the New Bern Police Department, requesting that Officer Tripp stop defendant for operating his vehicle while his driver's license was revoked.

Following Investigator Smith's directive, Officer Tripp effectuated the stop. Investigator Smith approached defendant and requested that defendant produce his driver's license. Defendant provided the investigator with a "limited driving privilege," which allowed defendant to operate a motor vehicle until 8:00 p.m. When asked where he was going, defendant responded that he was transporting his passenger to obtain kerosene.

The court specifically found that the time of the stop was approximately 8:20 p.m. The court further found the following facts in relation to the stop:

[Investigator Smith] instructed the defendant to exit the vehicle and turned him over to [Officer Tripp] and directed [Officer

STATE v. FISHER

[141 N.C. App. 448 (2000)]

Tripp] to cite the defendant for operating a motor vehicle while his driver[']s license was revoked and placed the defendant under arrest for such charge.

. . . [T]he defendant was taken by [Officer Tripp] back to his patrol car. [Officer Tripp] proceeded to write out the citation charging the defendant with operating his motor vehicle while his driver[']s license was revoked. That there was no indication that the defendant was anything but cooperative with the officers during this encounter. He displayed no act of violence or force of violence and did not attempt to retrieve any firearm or other deadly weapon from his person. There is no evidence before the Court that the defendant was personally searched at this time. . . . [N]or were there any observations by any other law enforcement officers at the scene that anything was observed openly exposed in the automobile to indicate the presence of any contraband, stolen goods, deadly weapons, firearms, or any other matters which would have alerted the officers that any violation of the law other than the one for which the defendant was stopped had occurred.

While Officer Tripp issued defendant a citation for driving while license revoked, Investigator Smith radioed a dispatcher and requested the assistance of "a K-9 unit." "[S]hortly thereafter," Officer John Carlstead ("Officer Carlstead") and his canine, Kiko, arrived. The court found that Kiko was "properly trained and utilized by the New Bern Police Department in the detection of controlled or illegal drugs[.]" Under the direction of Officer Carlstead, Kiko " 'sniff[ed]' the automobile" and "alerted on" the vehicle's front end.

The officers noticed a spring devise attached to the front bumper, and upon the officer's inquiry, defendant stated that the devise was used to secure the hood. Without obtaining defendant's consent or informing him of their intent to search the Blazer, the officers searched under the hood, where they located 135 grams of marijuana inside the vehicle's firewall.

The court found the following additional facts in connection with the encounter:

That other than such suspicion as [Investigator Smith] might have held based upon his personal knowledge of the defendant's past, there is nothing before the Court to indicate that upon the stop of the defendant for driving while his license was revoked,

there was any indication in the officer's mind, nor is there anything in which the Court can discern, that he saw any evidence of any illegal drugs or controlled substances located in or about the defendant's vehicle, and that other than the fact that the defendant was operating his vehicle at a time after the expiration of the limited license, there is nothing to indicate any illegal conduct on behalf of the defendant.

. . . There was no indication that there was any need to disarm the defendant in order to take him into custody nor any need to preserve evidence for later use at trial. Since after stopping the defendant and determining that he was outside the scope of his limited driving privilege, no further evidence would have been necessary.

Defendant was charged with possession of marijuana with intent to sell and deliver, maintaining a vehicle for the purpose of keeping controlled substances, and possession of drug paraphernalia. Bond was set, and defendant was released from custody on the drug-related charge. However, defendant's citation for driving while license revoked was never "sworn to before a magistrate." Nor, was a release order issued or a bond set on that charge.

Based on the aforementioned factual findings, the trial court granted defendant's motion to suppress.

The State appeals the order of the trial court granting defendant's motion to suppress. Our review of an order suppressing evidence is strictly limited. *State v. Cooke*, 306 N.C. 132, 291 S.E.2d 618 (1982). In evaluating such an order, this Court must determine whether competent evidence supports the trial court's findings of fact. *Id.* Findings of fact supported by competent evidence are binding on appeal. *Id.* "Inconsistencies or conflicts in the testimony *do not necessarily* undermine the trial court's findings, since such contradictions in the evidence are for the finder of fact to resolve." *State v. Bromfield*, 332 N.C. 24, 36, 418 S.E.2d 491, 497 (1992) (emphasis added)(citation omitted). "If there is a conflict between the [S]tate's evidence and defendant's evidence on material facts, it is the duty of the trial court to resolve the conflict[,] and such resolution will not be disturbed on appeal." *State v. Chamberlain*, 307 N.C. 130, 143, 297 S.E.2d 540, 548 (1982) (citation omitted). Although the trial court's findings of fact may be binding on appeal, we review its conclusions of law *de novo*. *State v. Mahaley*, 332 N.C. 583, 423 S.E.2d 58 (1992). We must not dis-

turb the court's conclusions if they are supported by the court's factual findings. *Cooke*, 306 N.C. 132, 291 S.E.2d 618.

The State does not challenge the court's findings of fact on appeal, but assigns as error the court's conclusions of law concerning the propriety of the search of defendant's vehicle. Based on the State's assignments of error and defendant's responses on appeal, we discern two dispositive issues: (I) whether defendant was actually arrested; and (II) whether the canine sniff of the perimeter of defendant's vehicle in a public place during a traffic stop was proper in light of the circumstances surrounding that traffic stop.

## (I)

**[1]** We first address whether defendant was actually arrested. In its factual findings, the trial court found the following:

> [Investigator] *Smith* instructed the defendant to exit the vehicle and turned him over to [Officer Tripp] and directed [Officer Tripp] to cite the defendant for operating a motor vehicle while his driver[']s license was revoked and *placed the defendant under arrest for such charge.* (Emphasis added.)

Although not specifically asserting that the aforementioned finding was erroneous, defendant contends on appeal that he was not arrested. Given the court's specific finding that Investigator Smith "placed" defendant under arrest, we find that defendant is in essence arguing that the above cited factual finding was not supported by competent evidence. We must agree.

The testimony of Investigator Smith and Officer Tripp at the suppression hearing was replete with internal contradictions concerning whether defendant was actually arrested. Investigator Smith testified that he informed defendant that he was under arrest for driving while license revoked at 8:54 p.m., the time written on the uniform citation. Investigator Smith further testified, "We placed him under arrest. We wrote him a citation. The arrest was written on the citation, a Magistrate's Order we'll call it. . . . It's written on a uniform ticket, but the magistrate signs off on it." Investigator Smith also stated that "Officer Tripp wrote the ticket, wrote the charge on an uniform ticket, that's true, but we took [defendant] to the magistrate's office where she signed off on the ticket, making it a Magistrate's Order, not the uniform ticket."

Investigator Smith later acknowledged, contrary to his own testimony, that although the officers procured a magistrate's order for

the drug-related charges, the citation for driving while license revoked was never signed by a magistrate. *See* N.C. Gen. Stat. § 15A-511(c) (1999) ("If the person has been arrested, for a crime, without a warrant [the] magistrate must determine whether there is probable cause . . . ."). Nor, was there a release order signed or bond set pursuant to defendant's alleged warrantless arrest for driving while license revoked. *See* N.C.G.S. § 15A-511(e) (If magistrate finds that arrest is supported by probable cause, "the magistrate must release him in accordance with Article 26 of this Chapter, Bail, or commit him to an appropriate detention facility . . . pending further proceedings . . . .")

Concerning the subsequent search of defendant's vehicle, Investigator Smith first testified that the search took place after the citation was written. However, upon being confronted with a State Bureau of Investigations report noting that the marijuana was seized at 8:30 p.m., and the citation for driving while license revoked indicating that it was completed at 8:54 p.m., Investigator Smith contradicted his own testimony by responding, "I don't recall if [the citation] was written at the scene of the incident or if it was written at the police station or whether it was written at the magistrate's office. That's something you have to inquire through Officer Tripp."

Officer Tripp likewise testified that Investigator Smith informed defendant that he was going to place him into custody, meaning he "was going to be transported." When asked whether he placed defendant in custody for driving while license revoked, Officer Tripp answered, "No." Officer Tripp then stated that defendant "was being taken into custody for purposes of doing [sic] the citation for driving while license revoked" and that he issued the citation while at the police station. However, Officer Tripp subsequently testified that the time appearing on the citation indicated when it was written.

The following exchange also took place during Officer Tripp's testimony:

Q [the State]. So, [Officer Tripp], was it your intent to take the defendant to jail for driving while license revoked?

MR. WILLEY [defendant's attorney]: Objection.

THE COURT: Well, I thought he said that's when [Investigator] Smith arrested him.

Ins't that what he said, "I arrested him[?"] Who arrested him here, both of them, one, or Officer Tripp?

Mrs. Hobbs [the State]: Well, Judge, not always the same officer does everything. I mean, Investigator Smith is the one with the prior knowledge, radios that to [Officer] Tripp. He pulls him over.

It's basically a team effort here, Judge. He knows the license was revoked. [Officer] Tripp—

The Court: I think the evidence is Officer Tripp did what [Investigator] Smith told him to do, is the way I get the picture. Go ahead.

A. Yes . . . . I just took him into custody and transported him to the police department . . . for the purpose to complete the processing of the charge that he was being charged with.

We recognize that contradictions and inconsistences rarely render a court's factual findings erroneous. However, the testimony presented at the suppression hearing concerning defendant's arrest contained material inconsistencies in the State's own evidence, not simply contradictions between the State's evidence and defendant's evidence. For example, Investigator Smith testified that he and Officer Tripp place defendant under arrest. However, Investigator Smith stated that the arrest was by virtue of a magistrate's order, which he later admitted was never signed. Nor, was a bond set or release order issued pursuant to defendant's alleged arrest for driving while license revoked. That kind of evidence would have clearly indicated that a warrantless arrest had been effectuated. Officer Tripp likewise testified that defendant was placed in custody for the purpose of issuing a citation, but never clearly testified that he or Investigator Smith actually arrested defendant.

Other than the officers' self-contradicting testimony, there was no other evidence signifying that defendant was arrested. In fact, the officers' complete failure to procure a magistrate's signature on the citation indicates that defendant was never arrested. Given the material, internal contradictions in the State's evidence and the complete lack of other evidence supporting the court's finding, we conclude that competent evidence did not support the court's finding that defendant was arrested.

STATE v. FISHER

[141 N.C. App. 448 (2000)]

(II)

[2] Next, we examine whether the perimeter canine sniff and subsequent search of defendant's vehicle was reasonable under the Fourth Amendment in light of our conclusion that defendant was never arrested.

It is well established that "[i]f officers have probable cause to arrest the occupants [of a vehicle], they may search—incident to that arrest—the entire interior of the vehicle, including the glove compartment, the console, or any other compartment, whether locked or unlocked, and all containers found within the interior." *State v. Brooks*, 337 N.C. 132, 144, 446 S.E.2d 579, 587 (1994) (citing *New York v. Belton*, 453 U.S. 454, 69 L. Ed. 2d 768, *reh'g denied*, 453 U.S. 950, 69 L. Ed. 2d 1036 (1981) and *State v. Andrews*, 306 N.C. 144, 147, 291 S.E.2d 581, 583 (1982)); *see also United States v. Robinson*, 414 U.S. 218, 38 L. Ed. 2d 427 (1973). In *Knowles v. Iowa*, 525 U.S. 113, 142 L. Ed. 2d 492 (1998), the United States Supreme Court recently announced that warrantless searches incident to the issuance of a citation violated the Fourth Amendment. In so holding, the Court reasoned that where a citation is issued, unlike when an arrest is effectuated, the two historic rationales for a search incident to an arrest, i.e., the need to disarm defendant and the need to collect evidence, do not per se exist. *Id.* at 116-18, 142 L. Ed. 2d at 498-99. The Court held that this was true even if the officers issuing the citation had probable cause to arrest the defendant. *Id.*

The trial court concluded the following concerning the search of defendant's vehicle:

[T]he search of the defendant's vehicle on the night of December 1, 1998, although conceivably being a search incident to arrest, does not fall within the exception set out by the United States Supreme Court in United States v. Robinson, 414 U.S. 218 (1973), since there was no need to disarm the defendant in order to take him into custody and there was no need to preserve any evidence for later use at a trial, and further, that there was no indication on the part of the arresting officers at the time of the stop that the defendant had violated any of the criminal laws of this state other than driving while his license was revoked, and there was no other indication that the defendant was committing any other illegal act which would require a full "field search" of his vehicle, and the search later carried out was done without consent of the defendant and without probable cause.

The court's reasoning was not entirely correct, given its reliance on the erroneous factual finding that defendant was arrested. However, its ultimate conclusion, that the search of defendant's vehicle was not justified by the historic rationales supporting a search incident to an arrest, i.e., a need to disarm defendant or preserve evidence, was accurate. Because defendant was never arrested, the search of his vehicle was not justified as a search incident to a lawful arrest. Furthermore, in accordance with *Knowles*, the officers were not justified in searching defendant's car based upon the issuance of the citation. This is true even though the officers may have had probable cause to arrest defendant.

The State contends that even if we find defendant was not arrested, no justification was necessary to conduct the canine sniff of the exterior of his car in a public place, because such a limited investigatory measure is not a search under the Fourth Amendment. With this argument, we must disagree.

In *United States v. Place*, 462 U.S. 696, 77 L. Ed. 2d 110 (1983), the United States Supreme Court found that a canine sniff of a airport passenger's luggage was not a search. In so finding, the Court reasoned that it was "aware of no other investigative procedure that is so limited both in the manner in which the information is obtained and in the content of the information revealed by the procedure." *Id.* at 707, 77 L. Ed. 2d at 121. This Court has adopted the *Place* analysis in at least three cases, finding that canine sniffs are not searches. *State v. Odum*, 119 N.C. App. 676, 459 S.E.2d 826 (1995) (canine sniff of a train passenger's luggage), *rev'd on other grounds*, 343 N.C. 116, 468 S.E.2d 245 (1996); *State v. McDaniels*, 103 N.C. App. 175, 405 S.E.2d 358 (1991) (briefcase), *aff'd*, 331 N.C. 112, 413 S.E.2d 799 (1992); *State v. Darack*, 66 N.C. App. 608, 312 S.E.2d 202 (1984) (lawfully detained airplane); *see cf. State v. Rogers*, 43 N.C. App. 475, 259 S.E.2d 572 (1979) (finding, pre-*Place*, that canine sniff of safety deposit box was not a search).

In *City of Indianapolis v. Edmond*, 531 U.S. 32, 148 L. Ed. 2d 333 (U.S. Nov. 28, 2000) (No. 99-1030), the United States Supreme Court, relying on *Place*, declared that a canine sniff of an exterior of a car is not a search. The *Edmond* court noted that "an exterior sniff of an automobile does not require entry into the car and is not designed to disclose any information other than the presence or absence of narcotics." *Edmond*, 531 U.S. at 40, 148 L. Ed. 2d at 343 (citing *Place*, 462 U.S. at 707, 77 L. Ed. 2d at 121). The court therefore concluded

STATE v. FISHER

[141 N.C. App. 448 (2000)]

that "[l]ike the dog sniff in *Place*, a sniff by a dog that simply walks around a car is 'much less intrusive than a typical search.' " *Id.* (quoting *Place*, 462 U.S. at 707, 77 L. Ed. 2d at 121).

Given our previous application of the principles articulated in *Place* to a variety of analogous situations, we adopt the United States Supreme Court's recent declaration that a canine sniff of a vehicle's perimeter is not a search. Despite this deduction, we are unpersuaded by the State's argument that no justification is needed to conduct a canine sniff of a vehicle's perimeter.

In *State v. McClendon*, 130 N.C. App. 368, 502 S.E.2d 902 (1998), *aff'd*, 350 N.C. 630, 517 S.E.2d 128 (1999), and *State v. Falana*, 129 N.C. App. 813, 501 S.E.2d 358 (1998), this Court indicated that although a canine sniff of the exterior of an automobile may not constitute a search, a defendant's detention during a traffic stop for the purpose of conducting a canine sniff must be justified by a reasonable suspicion, based on objective, specific, and articulable facts that criminal activity is afoot. The circumstances presented by both *Falana* and *McClendon* are similar to those *sub judice*.

In *Falana*, 129 N.C. App. 813, 501 S.E.2d 358, a state trooper stopped a vehicle based on suspicion of a traffic violation. After a brief investigation, the trooper confirmed his suspicion and issued a warning ticket. Based upon the defendant's nervousness, the trooper retrieved a canine from his vehicle and conducted a dog sniff of the exterior of the defendant's car. The canine alerted to the vehicle's passenger door, at which time the trooper searched the car finding a gun in the glove compartment and a bag of cocaine. This Court did not specifically discuss the canine sniff, but noted that the trooper's reasons for extending the traffic stop beyond the issuance of a warning ticket "were insufficient to support a further detention of the defendant once the warning ticket was issued and the defendant's papers were returned." *Id.* at 817, 501 S.E.2d at 360.

In *McClendon*, 130 N.C. App. 368, 502 S.E.2d 902, an officer observed the defendant speeding while following too closely behind a mini-van. Deducing that the defendant's vehicle and the mini-van were traveling together, the officer and one of his colleagues stopped both vehicles. One officer first spoke with the driver of the mini-van and issued him a warning ticket for speeding. The other officer spoke with the defendant, whose hand was trembling and who was unable to find the vehicle's registration or identify the vehicle's owner.

The officer further questioned the defendant and ran a license check of defendant's driver's license and the vehicle registration. The address on the defendant's license matched that of the registration. Still, the name specified by the defendant as the vehicle's owner did not appear on the title. The officer issued a warning ticket for speeding and following too closely. After the defendant refused to consent to a search, the officers performed a canine sniff of the vehicle's exterior, and the canine alerted to the rear of the defendant's vehicle. A subsequent search of the car floorboard revealed a quantity of marijuana.

This Court noted that although the scope of the defendant's detention must be " 'carefully tailored to its underlying justification[,]' " the investigating officers " 'may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.' " *Id.* at 375, 502 S.E.2d at 906-07 (citations omitted). These questions and other similarly limited investigatory measures must be " 'legitimately aimed at confirming the defendant's identity' " and must be " 'reasonably related to the purpose of issuing a warning ticket,' " i.e., the purpose of the underlying stop. *Id.* at 375, 502 S.E.2d at 907 (citation omitted).

The Court found that the questions asked by the officers following the initial traffic stop were "legitimately aimed at confirming" the officer's suspicions that criminal activity was afoot. *Id.* at 376, 502 S.E.2d at 907. The Court found that the detention of the defendant subsequent to the issuance of the warning ticket (during which time the canine sniff was performed) was also justified by a reasonable suspicion. The Court noted that the officers' suspicion was based on facts gleamed from the questioning of the defendant during the traffic stop, including defendant's nervousness, inconsistent and vague answers, and other factors. *Id.* at 378, 502 S.E.2d at 908.

We find *Falana* and *McClendon* controlling. In the present case, the officers clearly possessed reasonable suspicion or even probable cause to believe defendant was driving while his license was revoked. The officers stopped defendant, performed limited measures to further investigate and confirm their suspicions concerning defendant's non-drug related criminal activity, and began issuing him a citation.

However, while the officers investigated their suspicions related to the subject of the initial traffic stop and detained the defendant for

the purpose of issuing the citation, "there [was] nothing to indicate any illegal conduct on behalf of the defendant." The trial court duly noted that defendant was cooperative and nonviolent and that the officers did not observe any contraband, firearms, or other evidence related to criminal activity in defendant's vehicle. Accordingly, the officers did not possess reasonable suspicion based upon objective facts to detain defendant for investigative measures outside the scope of the initial traffic stop. Likewise, the officers did not obtain any evidence which would justify extending defendant's detention beyond the time it took to investigate the initial traffic stop. Thus, defendant's detention during the canine sniff was an illegal seizure, and the trial court properly suppressed evidence subsequently found as a result of that canine sniff.

The State contends on appeal that the officers possessed a reasonable suspicion to detain defendant based on Investigator Smith's knowledge that the area of the traffic stop was notorious for its drug trade and that defendant was previously involved in drug-related activity. We recognize that under the totality of the circumstances, a trial court may consider the above cited factors in determining whether officers possess reasonable suspicion to detain a defendant beyond the scope of the initial traffic stop. *See State v. Watson*, 119 N.C. App. 395, 458 S.E.2d 519 (1995). However, those two factors standing alone are insufficient to justify detaining an individual for the purpose of conducting a canine sniff or other limited, investigative measures outside the scope of the initial stop.

Based on the foregoing reasons, we affirm the trial court's order suppressing evidence recovered in the search of defendant's vehicle.

Affirmed.

Chief Judge EAGLES and Judge FULLER concur.