STATE OF NORTH CAROLINA v. THOMAS BATTLE, JR.

No. 918SC1053

(Filed 16 March 1993)

**Searches and Seizures § 12 (NCI3d)— DWI—investigatory stop—
communication from another officer**

> An investigatory stop of a vehicle was constitutional and
> the trial court erred by suppressing evidence obtained therefrom
> in a DWI prosecution where the first officer, Officer Harmon,
> observed defendant sitting in the driver's seat of a red four
> door Pontiac in the parking lot of a washerette; Officer Harmon
> believed defendant was impaired by alcohol based on tests
> given defendant and the odor of alcohol on his person; Officer
> Harmon told defendant not to drive and drove his vehicle
> from the parking lot, leaving defendant and other men stand-
> ing near defendant's vehicle; Officer Harmon radioed Officer
> Beekin to be on the lookout for a red four door Pontiac with
> the license plate number of defendant's automobile; Officer
> Beekin saw an automobile fitting that description leave the
> parking lot and drive onto a public street; Officer Beekin fol-
> lowed the vehicle for approximately four blocks and did not
> observe anything unusual about the operation of the automobile;
> and Officer Beekin stopped the automobile and arrested de-
> fendant for driving while impaired. Although Officer Beekin
> did not have the reasonable suspicion necessary to make the
> stop of defendant's vehicle based either on his own observa-
> tions or on any particular information communicated to him
> by Officer Harmon, the instructions to "be on the lookout"
> for the vehicle were tantamount to a request "to stop" the
> vehicle and the stop was therefore constitutional.

**Am Jur 2d, Automobiles and Highway Traffic § 304.**

Appeal by State from order entered 8 August 1991 in Wayne
County Superior Court by Judge Cy A. Grant. Heard in the Court
of Appeals 13 January 1993.

*Attorney General Lacy H. Thornburg, by Assistant Attorney
General Joseph P. Dugdale, for the State.*

*Barnes, Braswell, Haithcock & Warren, P.A., by Glenn A.
Barfield, for defendant-appellee.*

STATE v. BATTLE

[109 N.C. App. 367 (1993)]

GREENE, Judge.

The State appeals, prior to trial and pursuant to N.C.G.S. § 15A-979(c), from the trial court's order granting defendant Thomas Battle, Jr.'s motion to suppress evidence obtained by the State as a result of an investigatory stop of his vehicle.

On 9 December 1990, defendant was arrested for driving while impaired following an investigatory stop of his vehicle by Goldsboro Police Officer Jeff Beekin (Officer Beekin), who stopped defendant pursuant to a radio report from fellow Officer Dennis Harmon (Officer Harmon). After his arrest defendant was transported to the police station for a breathalyzer test. The results of this test showed a blood alcohol level of .16. Defendant was tried and found guilty of driving while impaired in district court, and gave notice of appeal to the superior court. Defendant entered a plea of not guilty in superior court and filed a motion in limine to suppress the evidence from the breathalyzer test and all other evidence obtained from the stop of his vehicle by Officer Beekin. After hearing *voir dire* testimony on 5 August 1991, the trial court made the following pertinent findings of fact:

4. That Officer Dennis Harmon of the Goldsboro Police Department responded to the radio dispatch to go to the washerette . . . to investigate a public disturbance.

5. That Officer Harmon went to the washerette and noticed that the defendant was seated behind the steering wheel of a red colored four-door Pontiac automobile parked in the parking lot of the washerette.

6. That Officer Harmon went up to where the defendant was parked and asked the defendant [to get] out of the vehicle and the defendant complied.

7. That Officer Harmon noticed an odor of alcohol on the defendant's breath.

8. That Officer Harmon had the defendant perform two field sobriety tests: Finger-to-nose test and a sway test.

9. That the defendant performed poorly on both tests.

10. That Officer Harmon told the defendant not to drive the automobile because in the officer's opinion, the defendant was impaired by alcohol.

11. That there were at least three other people standing in and about the vehicle [in] which the defendant was seated while the officer was present.

12. That Officer Harmon then drove his vehicle from the washerette parking lot leaving the defendant and the other men standing near the defendant's vehicle.

13. That Officer Harmon radioed . . . Officer Jeff Beekin, who was on routine patrol, and informed Officer Beekin to be on the lookout for a red four-door Pontiac automobile with the license plate number of the automobile in which the defendant was sitting.

14. That approximately five to seven minutes after receiving the call, Officer Beekin, while on patrol, saw an automobile fitting the description given by Officer Harmon leave the parking area of the washerette and drive onto a public street.

15. That Officer Beekin drove his patrol vehicle up behind the red Pontiac and noticed the vehicle had the same license plate number as the automobile described by Officer Harmon.

16. That Officer Beekin followed the automobile for approximately four blocks and did not observe anything unusual about the operation of the automobile.

17. That Officer Beekin observed four people riding in the automobile.

18. That Officer Beekin stopped the automobile and found the defendant to be the driver and placed him under arrest for driving while impaired.

Based on these findings of fact, the trial court made the following conclusions of law:

1. Officer Beekin did not have any reason to believe or suspect that the person operating the automobile was the defendant or was in any way engaged in criminal activity.

2. That the defendant's federal and state constitutional rights were violated by the stop of the automobile.

The trial court then allowed the defendant's motion to suppress the evidence obtained as a result of the stop of defendant's vehicle.

The State argues that the collective knowledge of Officer Beekin and Officer Harmon was sufficient to create a reasonable suspicion on the part of Officer Beekin of criminal activity, thus justifying the stop. Defendant argues that Officer Beekin did not have the reasonable suspicion of criminal activity needed to justify the stop of defendant's vehicle, and therefore all evidence that resulted from that stop was correctly suppressed by the trial court.

---

The dispositive issue is whether Officer Beekin had the requisite reasonable suspicion to justify the stop of defendant's vehicle.

A police officer may conduct a brief investigatory stop of a vehicle, even though there is no probable cause for the stop, when justified by specific, articulable facts which would lead a police officer "reasonably to conclude in light of his experience that criminal activity may be afoot." *Terry v. Ohio*, 392 U.S. 1, 30, 20 L. Ed. 2d 889, 911 (1968); *State v. Thompson*, 296 N.C. 703, 706, 252 S.E.2d 776, 778, *cert. denied*, 444 U.S. 907, 62 L. Ed. 2d 143 (1979) (officer's conduct in investigatory stops governed by standard set forth in *Terry*). In determining whether an officer has the necessary reasonable suspicion of criminal activity, the court must examine both the articulable facts known to the officer at the time he determines to stop the vehicle and the rational inferences the officer was entitled to draw from those facts. *Thompson*, 296 N.C. at 706, 252 S.E.2d at 779. These facts and inferences must yield the "substantial possibility that criminal conduct has occurred, is occurring, or is about to occur" in order for an investigatory stop to be valid. 3 Wayne R. LaFave, *Search and Seizure* § 9.3(b), at 432 (2d ed. 1987); *see also United States v. Cortez*, 449 U.S. 411, 417, 66 L. Ed. 2d 621, 628 (1981) ("stop must be justified by some objective manifestation that the person stopped is, or is about to be, engaged in criminal activity"); *State v. Jones*, 96 N.C. App. 389, 395, 386 S.E.2d 217, 220 (1989), *disc. rev. denied*, 326 N.C. 366, 389 S.E.2d 809 (1990) (quoting *Cortez*). In determining whether there exists the requisite reasonable suspicion, the court must view the totality of the circumstances through the eyes of a reasonable and cautious police officer at the scene. *Jones*, 96 N.C. App. at 395, 386 S.E.2d at 221.

If the officer making the investigatory stop (the second officer) does not have the necessary reasonable suspicion, the stop may nonetheless be made if the second officer receives from another

STATE v. BATTLE

[109 N.C. App. 367 (1993)]

officer (the first officer) a request to stop the vehicle, and if, at the time the request is issued, the first officer possessed a reasonable suspicion that criminal conduct had occurred, was occurring, or was about to occur. *United States v. Hensley*, 469 U.S. 221, 232, 83 L. Ed. 2d 604, 614 (1985); *see State v. Zuniga*, 312 N.C. 251, 260, 322 S.E.2d 140, 145 (1984) (second officer may rely on bulletin from first officer calling for defendant's detention as probable cause for arrest when "originating [first] officer himself had probable cause"); *State v. Tilley*, 44 N.C. App. 313, 317, 260 S.E.2d 794, 797 (1979) (arrest of defendant by second officer justified based on first officer's request to take into custody where first officer had probable cause for arrest).

Where there is no request from the first officer that the second officer stop a vehicle, the collective knowledge of both officers may form the basis for reasonable suspicion by the second officer, if and to the extent the knowledge possessed by the first officer is communicated to the second officer. *State v. Gray*, 55 N.C. App. 568, 570, 286 S.E.2d 357, 359 (1982) (officer's investigatory stop of vehicle justified when officer observed defendant's vehicle being operated on highway and shortly thereafter heard radio report from another officer that defendant's vehicle had expired license tags); *see United States v. Nafzger*, 974 F.2d 906, 914-15 (7th Cir. 1992) (investigatory stop of vehicle justified without request that vehicle be stopped where local officer had been told by FBI that defendant was suspected in stolen car ring and local officer recognized defendant as he drove on highway).

In summary, an investigatory stop by a police officer is constitutional, under the principles of *Terry*, only if: (1) the officer making the stop has a reasonable suspicion, based on his personal observations, that criminal conduct has occurred, is occurring, or is about to occur; (2) the officer making the stop has received a request to stop the defendant from another officer, if that other officer had, prior to the issuance of the request, the necessary reasonable suspicion; (3) the officer making the stop received, prior to the stop, information from another officer, which, when combined with the observations made by the stopping officer, constitute the necessary reasonable suspicion. A *Terry* stop made outside the scope of these rules is an unconstitutional stop and any evidence obtained as a result of the stop is subject to exclusion. *State v. Carter*, 322 N.C. 709, 712-13, 370 S.E.2d 553, 555 (1988) (Article I, Section 20 of the North Carolina Constitution requires exclusion

of evidence obtained as a consequence of unconstitutional stop); *Terry,* 392 U.S. at 12, 20 L. Ed. 2d at 900 (Fourth Amendment of the United States Constitution may require exclusion of evidence obtained from unreasonable search and seizure); *see also United States v. Leon,* 468 U.S. 897, 913, 82 L. Ed. 2d 677, 692 (1984) (adopting good-faith exception to exclusionary rule in some circumstances).

The findings of fact in this case, which are not in dispute, reveal that: (1) Officer Harmon observed defendant sitting in the driver's seat of a red four-door Pontiac in the parking lot of a washerette; (2) based on tests given defendant and the odor of alcohol on his person, Officer Harmon believed defendant was impaired by alcohol; (3) at the time of the radio message to Officer Beekin to "be on the lookout" for the red Pontiac, Officer Harmon had not observed anything to indicate that criminal activity had occurred or was occurring; (4) Officer Harmon did not communicate to Officer Beekin the information he gained from his conversation with and personal observation of defendant; and (5) Officer Beekin did not see the defendant's vehicle make any movement that indicated that criminal activity had occurred, was occurring, or was about to occur.

Therefore, Officer Beekin did not have the reasonable suspicion necessary to make the stop of defendant's vehicle, based either on his own observations or on any particular information communicated to him by Officer Harmon. A reasonable and cautious officer in the position of Officer Harmon, however, would have thought that there existed a substantial possibility that defendant would leave the parking lot driving the automobile. Accordingly, prior to the time Officer Harmon communicated his request to "be on the lookout" for the red four-door Pontiac, he did have the requisite reasonable suspicion that criminal activity was about to occur, specifically that defendant, whom Officer Harmon believed to be impaired, would leave the parking lot operating the vehicle. The fact that Officer Harmon did not instruct Officer Beekin "to stop" the vehicle is not material because the instructions to "be on the lookout" for the vehicle were tantamount to a request "to stop" the vehicle. The fact is that Officer Beekin did stop the vehicle in response to the communication from Officer Harmon. The stop was therefore constitutional, and the evidence obtained as a consequence of the stop was admissible.

The order of the trial court suppressing the evidence obtained as a result of the stop is therefore

Reversed and remanded.

Judges JOHNSON and MARTIN concur.