STATE OF NORTH CAROLINA v. DARRELL E. HAMILTON

No. COA96-299

(Filed 18 February 1997)

**1. Searches and Seizures § 35 (NCI4th)— stop of vehicle— seat belt violation—cocaine—passenger**

The trial court did not err in denying defendant's motion to suppress where a police officer discovered 19.2 grams of cocaine on defendant after the officer stopped the vehicle in which defendant was a passenger. The officer had authority to stop the vehicle for the purpose of issuing a seat belt citation because he had observed that neither the driver nor the defendant was wearing one. The stop of the vehicle was therefore not inconsistent with the Fourth Amendment, even though a reasonable officer may not have made the stop.

**Am Jur 2d, Searches and Seizures § 68.**

**2. Searches and Seizures § 35 (NCI4th)— stop of vehicle— seat belt violation—asking passenger to exit vehicle—discovery of cocaine**

It was not error for the trial court to deny defendant's motion to suppress evidence of 19.2 grams of cocaine which was seized from defendant, a passenger in a vehicle which was stopped during a routine traffic violation, after defendant was asked to exit the vehicle. The police officer had probable cause to believe that the defendant passenger had committed the infraction of riding in the front seat of a vehicle without wearing a seat belt and thus

his detention was more than an inevitable incident of the stopping of the vehicle. As such, the rationale that supports allowing the police to *per se* request a driver detained for a traffic violation to exit the vehicle applies to a request to a passenger who the police have probable cause to believe has committed a crime or infraction.

**Am Jur 2d, Searches and Seizures §§ 67, 68, 70.**

**3. Searches and Seizures § 82 (NCI4th)— traffic stop—pat-down search for weapons—discovery of cocaine**

The evidence supported the trial court's denial of defendant's motion to suppress cocaine discovered during a pat-down search of defendant pursuant to a routine traffic stop. The defendant's hand began to reach toward his left side just before exiting the vehicle. The trial court found cause for the police officer to believe that the defendant was reaching for a weapon. Therefore, the pat-down of defendant was reasonable since the officer had grounds to believe the defendant could be armed and dangerous.

**Am Jur 2d, Searches and Seizures §§ 74, 75, 78.**

**Search and seizure: "furtive" movement or gesture as justifying police search. 45 ALR3d 581.**

**Permissibility under Fourth Amendment of detention of motorist by police, following lawful stop for traffic offense, to investigate matters not related to offense. 118 ALR Fed. 567.**

Appeal by defendant from order entered 1 September 1995 in Craven County Superior Court by Judge W. Russell Duke, Jr. Heard in the Court of Appeals 7 January 1997.

*Attorney General Michael F. Easley, by Special Deputy Attorney General John R. Corne and Special Deputy Attorney General Robert T. Hargett, for the State.*

*William F. Ward, III, P.A., by William F. Ward, III, for defendant-appellant.*

GREENE, Judge.

Darrell E. Hamilton (defendant) appeals from the trial court's order denying his motion to suppress 192.5 grams of crack cocaine that were found during a search of his person. The defendant pled

guilty to the crime of trafficking of cocaine by transportation after the court denied his motion to suppress this evidence at a pre-trial conference. As part of the plea arrangement, defendant preserved his right to appeal the denial of this motion pursuant to N.C. Gen. Stat. § 15A-979(b) (1988).

It is undisputed that on 5 May 1995 Sergeant George Shaver (Shaver) of the New Bern Police Department Narcotics unit observed the defendant and Wayne F. McDowell (McDowell) getting off a Greyhound bus from New York City at the New Bern bus station carrying only a small piece of luggage. After looking in the direction where the officer was sitting in his car, the defendant appeared nervous. He and McDowell were seen immediately entering a cab driven by the Reverend Otis Turnage (Turnage), the owner of a small cab company who was frequently in court regarding traffic violations and at that time under investigation because of a problem with his cab permit.

The evidence shows that Shaver called "the other officers in the area and told them that [he had seen] two black males [who] had exited the bus very quickly, acting in a very nervous manner, carrying one carry-on bag and had gotten into a cab and exited the area very quickly" in the direction of the Trent housing project (housing project), a neighborhood where drugs were known to be sold. Ronnie Lovick (Lovick), an investigator with the New Bern Police Department, was one of the officers whom Shaver radioed. Lovick was told to "investigate [and] use [his] skills to decide if or what was going on." Lovick then followed the cab in an unmarked car and shortly thereafter noticed that neither Turnage nor the defendant (who was in the front passenger seat) had his seat belt on. Lovick testified that he "decided to go ahead and stop them on the main part of the highway" rather than wait until they reached the housing project. Lovick further testified that he then approached the front passenger side of the car and informed the defendant that he "was a police officer" and then the defendant's "hand began to reach toward his left side" which lead Lovick to suspect he was reaching for a weapon. Lovick then asked the defendant to step outside of the car and told him that he was going to frisk him. He then had the defendant face the car and began to pat down his body. When he reached the point just below the defendant's stomach, he felt "something very, very large and very, very hard" which he thought might be a gun. He removed the item which was later discovered to be 192.5 grams of crack cocaine.

**STATE v. HAMILTON**

[125 N.C. App. 396 (1997)]

Based on this evidence and findings consistent with the evidence the trial court denied the motion to suppress concluding that both the stop and the search of the defendant were proper. In its order the trial court found that the defendant's actions "caused Lovick to be concerned for his personal safety."

The issues are whether: (I) the stop of the vehicle in which the defendant was a passenger was consistent with the Fourth Amendment prohibition against unreasonable seizures; (II) the officer had the authority, within the scope of the Fourth Amendment, to ask defendant to exit the vehicle in which he was a passenger; and (III) the search of the defendant, outside the vehicle, was consistent with the Fourth Amendment prohibition against unreasonable searches.

I

[1] The defendant argues that the stop of the vehicle in which he was a passenger for the stated purpose of issuing a citation for a seat belt violation was a mere pretext for investigating the defendant for possession of illegal drugs. As such, the defendant contends, the stop violates the Fourth Amendment. We disagree.

The United States Supreme Court has recently held that the temporary detention of a motorist upon probable cause[1] to believe that he has violated a traffic law is not inconsistent with the Fourth Amendment's prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist. *Whren v. United States*, — U.S.—, —, 135 L. Ed. 2d 89, 98 (1996). Probable cause exists if " 'the facts and circumstances within [the] knowledge [of the officer] were sufficient to warrant a prudent man in believing that the (suspect) had committed or was committing the offense.' " *State v. Streeter*, 283 N.C. 203, 207, 195 S.E.2d 502, 505 (1973) (quoting *Beck v. Ohio*, 379 U.S. 89, 91, 13 L. Ed. 2d 142, 145 (1964)). Thus it is immaterial to Fourth Amendment analysis that the officer may have had "ulterior motives" for the traffic stop, *id.; United States v. Stribling*, 94 F.2d 321, 323 (7th Cir. 1996), and the inquiry (under the United States Constitution) is no longer what a reasonable officer

---

1. In *Whren v. United States*, — U.S.—, 135 L. Ed. 2d 89 (1996), the Court did not discuss whether its ruling would also apply to those situations where the officer did not have probable cause but had reasonable suspicion to stop the vehicle. As that issue is not presented in this case we do not address it. We do note that at least one federal circuit court has extended *Whren* to reasonable suspicion cases. *United States v. Dumas*, 94 F.3d 286, 290 (7th Cir. 1996).

*would* do, *see State v. Morocco*, 99 N.C. App. 421, 427, 393 S.E.2d 549, 548 (1990), but instead what the officer *could* do.

In North Carolina an officer may stop and issue a citation to any motorist who "he has probable cause to believe has committed a misdemeanor or infraction." N.C.G.S. § 15A-302(b) (1988). In North Carolina "[e]ach front seat occupant [of a motor vehicle] who is 16 years of age or older" is required to wear a seat belt if the "vehicle is in forward motion on a street or highway." N.C.G.S. § 20-135.2A(a) (1993). Any person violating this statute commits an infraction. N.C.G.S. § 20-135.2A(e).

In this case there is no dispute that Lovick had probable cause to stop the vehicle in which the defendant was a passenger. The officer observed that neither the driver nor the defendant passenger was wearing a seat belt and thus had authority to stop the vehicle for the purpose of issuing a seat belt citation. The stop of the vehicle was therefore not inconsistent with the Fourth Amendment, even though a reasonable officer may not have made the stop. The trial court thus did not err in denying the motion to suppress on this basis.

II

[2] This Court has recently held that the Fourth Amendment is not violated when an officer requires a driver of a vehicle, stopped for a traffic violation, to exit the vehicle. *State v. McGirt*, 122 N.C. App. 237, 239, 468 S.E.2d 833, 834 (1996). This procedure reduces the likelihood of assault on the officer and "is not a 'serious intrusion upon the sanctity of the person.' " *Id.* (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 109-11, 54 L. Ed. 2d 331, 336-37 (1977)).

In this case it is the passenger, not the driver, that is asked to exit the vehicle. There is substantial disagreement among the courts in other jurisdictions whether the police have the constitutional right to require passengers to exit a vehicle stopped for a traffic violation, in the absence of some individualized or particularized suspicion of that passenger. *See State v. Landry*, 588 So. 2d 345, 347 (La. 1991) (permitting police to require passengers to exit vehicle absent any particularized suspicion); *but see also Maryland v. Wilson*, 664 A. 2d 1, 10 (Md. 1995) (automatic prerogative of police during lawful traffic stop to order motorist out of vehicle does not extend to passengers, absent some individualized or particularized suspicion).

We need not address the issue raised in *Maryland* and *Landry* in this case. In those cases there is no evidence that police had proba-

STATE v. HAMILTON

[125 N.C. App. 396 (1997)]

ble cause to believe that the passengers in the vehicle had committed any crime or infraction. Indeed the *Maryland* court notes that the "passenger has not committed any wrongdoing, even at the level of a traffic violation." *Maryland*, 664 A. 2d at 9. In this case, Lovick had probable cause to believe that the defendant passenger had committed the infraction of riding in the front seat of a vehicle without wearing a seat belt and thus his detention was more than an inevitable incident of the stopping of the vehicle. As such, the rationale that supports allowing the police to *per se* request a driver detained for a traffic violation to exit the vehicle applies to a request to a passenger who the police have probable cause to believe has committed a crime or infraction. Accordingly the trial court did not err in denying the motion to suppress on this basis.

### III

[3] While a routine traffic stop "does not justify in every instance a protective search for weapons," an officer is "permitted to conduct a 'pat-down' for weapons once the defendant is outside the automobile . . . if the circumstances give the police reasonable grounds to believe that the defendant may 'be armed and presently dangerous.' " *McGirt*, 122 N.C. App. at 239, 468 S.E.2d at 835 (quoting *Pennsylvania v. Mimms*, 434 U.S. 106, 112, 54 L. Ed. 2d 331, 337 (1977)).

In this case, the defendant's "hand began to reach toward his left side" (just before exiting the vehicle) which the trial court found caused Lovick to believe that the defendant was reaching for a weapon. This finding is supported in the evidence and we are bound by it. *State v. Crews*, 286 N.C. 41, 45, 209 S.E.2d 462, 465 (1974). Thus the pat-down for weapons was justified because Lovick had "reasonable grounds to believe the defendant could be 'armed and presently dangerous.' " *McGirt*, 122 N.C. App. at 239, 468 S.E.2d at 835 (quoting *Mimms*, 434 U.S. at 112, 54 L. Ed. 2d at 337). The trial court thus did not err in denying the motion to suppress on this basis.

Affirmed.

Judges EAGLES and MARTIN, John C., concur.