STATE OF NORTH CAROLINA v. LARRY GENE McRAE

No. COA02-21

(Filed 17 December 2002)

**Search and Seizure— cocaine—voluntarily given to officers—
frisk following traffic stop**

The trial court did not err by denying defendant's motion to
suppress cocaine which he voluntarily gave to officers during the
course of a constitutionally reasonable frisk following a traffic
stop. Defendant was seen in a well known drug area at night par-
ticipating in a drug transaction; he was stopped for speeding; offi-
cers discovered that his license tags were fictitious and that his
driver's license had been revoked; defendant was nervous; and
defendant repeatedly moved his hands in and out of his pockets
despite being asked not to do so. The totality of these circum-
stances provided reasonable grounds to frisk defendant even
though he was otherwise cooperative and presented no obvious
signs of carrying a weapon.

Appeal by defendant from order entered 15 May 2001 by Judge E.
Lynn Johnson in Robeson County Superior Court. Heard in the Court
of Appeals 14 October 2002.

*Attorney General Roy Cooper, by Assistant Attorney General
Rudy E. Renfer, for the State.*

*Public Defender Angus B. Thompson, II, by Assistant Public
Defender Ronald H. Foxworth, for defendant-appellant.*

THOMAS, Judge.

Defendant, Larry Gene McRae, appeals from the denial of his
suppression motion. Following the trial court's decision, defendant
pled guilty to felony possession of cocaine and misdemeanor pos-
session of drug paraphernalia pursuant to a plea agreement in which
he preserved his right to appeal the denial of his motion pursuant to
N.C. Gen. Stat. § 15A-979(b).

By his sole assignment of error, defendant contends the trial
court erred in concluding that the law enforcement officers had con-
stitutionally reasonable grounds to justify the stop of his vehicle and
subsequent search of his person. For the reasons herein, we affirm
the trial court.

STATE v. McRAE

[154 N.C. App. 624 (2002)]

The testimony at the suppression hearing tends to show the following: On 5 December 1997, at approximately 9:15 p.m., Corporal Bill Leggett and Sergeant David Prevatte of the Rowland Police Department were on patrol traveling north on Martin Luther King Boulevard. The officers observed defendant's vehicle, a gray Lincoln, parked in a private parking lot. The area is a "well known drug area" and a sign prohibiting trespassing after 8:00 p.m. was posted on the premises.

Leggett testified he observed defendant get in and out of the vehicle several times and "there [were] a lot of people gathering around." According to Leggett, during one of the times defendant was out of the vehicle, defendant was approached by a man in a blue jacket. Leggett noticed something being passed between the two men, leading him to suspect a sale of an item had occurred.

Prevatte, meanwhile, testified to merely observing a man approach the driver's side window of defendant's vehicle and have a conversation with defendant "for about a minute." The man then left and went back across the street. Prevatte did not testify to seeing anything pass between the two.

Following his encounter with the man in the parking lot, defendant drove his vehicle off the lot and turned right on Martin Luther King. The officers' suspicions had been roused due to the time of night and their knowledge that the area was a popular location for drug transactions, so they turned their patrol car around and followed defendant.

While continuing to trail him, they ran a license check, and eventually paced defendant traveling 45 mph in a 35 mph zone. After defendant made a right turn onto North Hine Street, the officers activated their blue lights and pulled him over for speeding. They then received word that the license tag on defendant's vehicle was assigned to another vehicle.

Prevatte approached defendant's vehicle and discovered defendant in the driver's seat and a female in the passenger seat. Prevatte asked defendant for his driver's license. Prevatte could not remember whether defendant had produced a driver's license when asked; however, Prevatte testified that a subsequent check indicated defendant's license was revoked. Prevatte asked defendant to step out and go to the front of the vehicle in order for the officers to inquire further about the vehicle's ownership.

Defendant was "extremely nervous," according to Prevatte, repeatedly placing his hands in his pockets and removing them. While defendant did not take out any objects, he continued to put his hands in and out of his pockets after being asked not to do so by Prevatte.

Concerned for the officers' safety, Prevatte conducted a "pat-down" frisk of defendant and felt an "undetermined object" in defendant's pocket. Prevatte asked defendant to remove the object and place it on the hood of the car. Defendant acquiesced, removing some copper and metal wiring. Prevatte then asked if defendant had anything else in his pockets and defendant responded by pulling out a rock of cocaine. Defendant, then placed under arrest, indicated he had purchased the cocaine to trade for sex with his female passenger. Defendant was later charged with possession of drug paraphernalia and possession of cocaine.

Defendant, meanwhile, testified at the suppression hearing that he had purchased cocaine at the corner store, but had done so in front of the store, not in the parking lot across the street. He said he obeyed all traffic laws after leaving the parking lot and did not speed. He further noted that he was not ticketed for speeding by the officers. Upon being pulled over, he was asked for his driver's license and registration, produced his license, but could not find his registration. He was then asked to step from the car and was searched. He never consented to the search. According to defendant, the cocaine was found in the bill of his cap.

Following the suppression hearing, the trial court made the following findings of fact and conclusions of law:

### Findings of Fact

1. That on December 5, 1997 at approximately 9:15 p.m., Corporal Lee Leggett, (now Chief of Police, Fair Bluff, N.C.,) and Sergeant Daniel Prevatte, both of the Rowland Police Department observed the Defendant in a gray Lincoln.

2. That the Defendant was at a location that had been posted for "no trespassing" after 8:00 p.m., that the Defendant was parked in a well known drug area and the officers observed the Defendant participate in a "drug transaction"; that a female was in the passenger side of the gray Lincoln.

3. That the officers fell in behind the gray Lincoln as it left the area and paced the vehicle exceeding the posted speed limit at 45 mph in a 35 mph zone.

4. That the officers checked the license tag and found that the tags were assigned to another vehicle.

5. That the vehicle was stopped and the Defendant was found to be the driver and that there was a female passenger.

6. That the Defendant was asked for identification and it was determined his license was in a state of revocation.

7. That the Defendant was asked to step to the front of the vehicle; that the Defendant was nervous moving his hands in and out of his pockets; that the Defendant was asked to remove the items from his pockets and the Defendant removed items that the officers recognized as drug paraphernalia; that the Defendant continued to empty his pockets and removed a rock of cocaine.

8. That the Defendant was then arrested and advised of his Miranda rights and he advised that the got the $10 rock of cocaine to Trade for sex.

## Conclusions of Law

1. That the officers had probable cause to stop the Defendant's vehicle for violation of the motor vehicle laws of this State, to wit, speeding and registration of the license plate.

2. That the officers thereafter determined that the Defendant's license was in a state of revocation giving the officers further probable cause to detain and arrest.

3. That the combination of the observed drug transaction and multiple violation occurring in the present [sic] of the officers, the conduct of the defendant, all gave the officers reasonable grounds to detain and frisk the Defendant.

4. That the purpose of the detention and the length of the detention was reasonable under the totality of the circumstances.

Based on its findings of fact and conclusions of law, the trial court denied defendant's motion to suppress.

Our review of a trial court's denial of a motion to suppress is limited to a determination of whether its findings are supported by competent evidence, and if so, whether the findings support the trial

court's conclusions of law. *State v. Allison*, 148 N.C. 702, 704, 559 S.E.2d 828, 829 (2002). "This Court will not review a trial court's findings of fact when defendant merely makes a general contention that the trial court's findings are not supported by the evidence." *State v. Steen*, 352 N.C. 227, 238, 536 S.E.2d 1, 8 (2000), *cert. denied*, 531 U.S. 1167, 148 L. Ed. 2d 997 (2001).

Here, defendant, in his sole assignment of error, has failed to specifically except to any of the trial court's findings of fact. Additionally, defendant failed to identify in his brief which of the trial court's findings of fact are not supported by the evidence. Because defendant has assigned error to the trial court's findings of fact only in a general fashion, the focus of our analysis is whether the trial court's findings overall support its conclusion that the stop and subsequent search of defendant was constitutional.

Article I, Section 20 of our North Carolina Constitution, as does the Fourth Amendment to the United States Constitution, protects against *unreasonable* searches and seizures. *State v. McClendon*, 350 N.C. 630, 636, 517 S.E.2d 128, 132 (1999). The temporary detention of a motorist upon probable cause to believe that he has violated a traffic law is not inconsistent with the prohibition against unreasonable seizures, even if a reasonable officer would not have stopped the motorist for the violation. *Id.* (officer had probable cause to stop station wagon driven by defendant because defendant was speeding); *see also Whren v. United States*, 517 U.S. 806, 135 L. Ed. 2d 89 (1996); *State v. Hamilton*, 125 N.C. App. 396, 400, 481 S.E.2d 98, 100 (1997) (officer had probable cause to stop vehicle in which defendant was a passenger based on officer's observation that neither the driver nor defendant passenger was wearing a seat belt). Probable cause exists where the facts and circumstances within the knowledge of the officer, when objectively viewed through the eyes of a reasonable, cautious officer, guided by his experience and training, are sufficient to warrant a prudent man's belief that the suspect has committed or is committing an offense. *See State v. Crenshaw*, 144 N.C. App. 574, 577, 551 S.E.2d 147, 149 (citing *State v. Munoz*, 141 N.C. App. 675, 682, 541 S.E.2d 218, 222 (2001)), *cert. denied*, 353 N.C. 454, 548 S.E.2d 534 (2001) ; *Hamilton*, 125 N.C. App. at 399, 481 S.E.2d at 100 (citing *State v. Streeter*, 283 N.C. 203, 207, 195 S.E.2d 502, 505 (1973) (citation omitted)).

Here, the facts found by the trial court conclusively establish that the officers had probable cause to stop defendant's vehicle for

speeding. The trial court found that the officers paced defendant's vehicle "exceeding the posted speed limit at 45 mph in a 35 mph zone." We therefore conclude the officers in this case were justified in stopping defendant's vehicle. *See McClendon*, 350 N.C. at 636, 517 S.E.2d at 132.

Having established that the initial stop of defendant's vehicle was proper, we next address whether the subsequent search of defendant's person was constitutionally reasonable.

When an officer has lawfully detained a vehicle based on probable cause to believe that a traffic law has been violated, he may order the driver to exit the vehicle. *See State v. McGirt*, 122 N.C. App. 237, 239, 468 S.E.2d 833, 834-35 (1996) (citing *Pennsylvania v. Mimms*, 434 U.S. 106, 111, 54 L. Ed. 2d 331, 337 (1977)), *aff'd per curiam*, 345 N.C. 624, 481 S.E.2d 288 (1997). The officer is permitted to conduct a "pat-down" frisk to discover a weapon or weapons once the defendant is outside the vehicle, "[i]f he reasonably believes that the person is armed and dangerous[.]" *State v. Pearson*, 348 N.C. 272, 275, 498 S.E.2d 599, 600 (1998); *see also Terry v. Ohio*, 392 U.S. 1, 20 L. Ed. 2d 889 (1968); *State v. Butler*, 331 N.C. 227, 415 S.E.2d 719 (1992); *State v. Peck*, 305 N.C. 734, 291 S.E.2d 637 (1982). In determining that an individual might be armed and dangerous, the officer is entitled to formulate common-sense conclusions about " 'the modes or patterns of operation of certain kinds of lawbreakers.' " *Butler*, 331 N.C. at 234, 415 S.E.2d at 723 (quoting *United States v. Cortez*, 449 U.S. 411, 418, 66 L. Ed. 2d 621, 629 (1981)).

Here, the officers observed defendant's vehicle parked "in a well known drug area" in violation of a posted "No Trespassing" sign. Prevatte saw defendant engaged in a conversation with a man who had walked to the driver's side window of defendant's vehicle. This, coupled with the time of night and the area in which defendant was parked, roused Prevatte's suspicions that defendant was involved in drug trafficking. Additionally, Leggett testified that he saw something being passed from a man in the parking lot to defendant. Based on this evidence, the trial court found as fact that defendant participated in a "drug transaction."

After defendant exited the parking lot, the officers paced him traveling 45 mph in a 35 mph zone and lawfully stopped him for speeding. Prior to encountering defendant in his vehicle, the officers determined the license tags on the vehicle to be fictitious. Prevatte was thus entitled to inquire further regarding the vehicle's ownership.

*See McClendon*, 350 N.C. at 637, 517 S.E.2d at 133. Accordingly, he asked defendant to step out and go to the front of the vehicle.

Defendant appeared "extremely nervous" to Prevatte, and repeatedly put his hands in and out of his pockets. Defendant continued doing so even after Prevatte told him to stop. Prevatte then conducted a "pat-down" search of defendant for weapons and felt what he described as an "undetermined object" in defendant's pocket. He asked defendant to remove it. Defendant voluntarily complied, placed drug paraphernalia on the hood of the car, and, when asked if he had anything else in his pockets, pulled out a rock of cocaine. Prevatte did not reach into defendant's pocket and the "pat-down" frisk was not otherwise unreasonably intrusive. Defendant simply voluntarily complied with Prevatte's request to empty his pockets. Under the circumstances of this case, we find that defendant's acquiescence to Prevatte's request amounted to clear and unequivocal consent for the seizure of the contraband removed from defendant's pockets.

When viewed from the common-sense perspective of a law enforcement officer performing his duties, these facts allowed Prevatte to form a reasonable belief that defendant was armed and dangerous. In sum, the trial court's findings of fact reveal: (1) defendant was observed in a "well know drug area" at night participating in a "drug transaction," *see Butler*, 331 N.C. at 234, 415 S.E.2d at 723 (in face-to-face encounter with person suspected of drug trafficking, officer could reasonably assume suspect might be armed); (2) he was stopped for speeding and the officers subsequently discovered the license tags on his vehicle were fictitious and his driver's license had been revoked; (3) he appeared "extremely nervous" when he stepped out of his car, *see McClendon*, 350 N.C. at 638, 517 S.E.2d at 134 (nervousness, like all other facts, must be taken in light of the totality of the circumstances, and is an appropriate factor to consider when determining whether a basis for reasonable suspicion exists); and (4) he repeatedly put his hands in and out of his pockets after being asked not to. *See Hamilton*, 125 N.C. App. at 401, 481 S.E.2d at 101 (suspect reached toward his left side before exiting vehicle, which trial court found caused officer to believe suspect was reaching for a weapon; "pat-down" for weapons justified based on reasonable belief suspect armed and dangerous). The totality of these circumstances, even in the face of an otherwise cooperative defendant who presented no obvious signs of carrying a weapon, supports the trial court's conclusion that Prevatte had reasonable grounds to frisk defendant. *See McGirt*, 122 N.C. App. at 240, 468 S.E.2d at 835.

Because the evidence sought to be suppressed by defendant was voluntarily given to the officers during the course of a constitutionally reasonable "pat-down" frisk, the trial court did not err in denying defendant's motion to suppress. Accordingly, we affirm.

Affirmed.

Chief Judge EAGLES and Judge TYSON concur.