An unpublished opinion of the North Carolina Court of Appeals does not constitute controlling legal authority. Citation is disfavored, but may be permitted in accordance with the provisions of Rule 30(e)(3) of the North Carolina Rules of Appellate Procedure.

NO. COA13-1106
NORTH CAROLINA COURT OF APPEALS

Filed:  15 April 2014

STATE OF NORTH CAROLINA

v.                                  Mecklenburg County
                                    Nos. 10 CRS 200906-07
JOSEPH ASHLEY DICKENSON, JR.,
    Defendant.


Appeal by defendant from judgment entered 13 November 2012 by Judge Linwood O. Foust in Mecklenburg County Superior Court. Heard in the Court of Appeals 20 February 2014.


> *Roy Cooper, Attorney General, by David Shick, Associate Attorney General, for the State.*

> *Staples Hughes, Appellate Defender, by Mary Cook, Assistant Appellant Defender, for defendant-appellant.*


DAVIS, Judge.


Defendant Joseph Ashley Dickenson, Jr. ("Defendant") appeals from a judgment entered upon a guilty plea to one count of Level One trafficking in marijuana in violation of N.C. Gen. Stat. § 90-95(h)(1)(a).  On appeal, he argues that the trial court erred in denying his motion to suppress evidence obtained pursuant to a stop of his vehicle by law enforcement officers.

After careful review, we affirm the trial court's denial of the motion to suppress.

## Factual Background

The evidence offered by the State at trial tended to show the following. On 6 January 2010, at around 8:00 p.m., Officer Nathan Watkins ("Officer Watkins") and Officer Michael Sullivan ("Officer Sullivan") with the Charlotte-Mecklenburg Police Department ("CMPD") were conducting surveillance of a residence in response to a complaint from a person who had observed "possible illegal drug transactions" involving a number of people and parcels moving in and out of the residence on a regular basis. Officer Watkins was surveilling the residence from a distance within 100 yards of the site, while Officer Sullivan conducted his surveillance of the residence in plain clothes from an unmarked vehicle.

Both officers observed a man who was later identified as Defendant remove two duffle bags or suitcases from the residence and place one of the bags into the trunk of a white, four-door Acura Legend automobile and the other into the back seat of the same vehicle. The officers then both observed Defendant drive away from the residence.

Officer Sullivan began to follow Defendant's car in his unmarked vehicle as Defendant drove onto I-485. As Officer

Sullivan followed Defendant, he communicated by radio to other officers a description of Defendant's vehicle, the license plate number, and the direction in which Defendant was travelling. Officer Sullivan also communicated to the other officers his observation that Defendant was not wearing a seatbelt, which he observed as Defendant was approaching the exit ramp to merge onto I-485.

Officer Michael Griffin ("Officer Griffin") testified that as he and a fellow officer were riding together in their patrol car, he heard Officer Sullivan communicate over the radio that Defendant was operating a white, four-door 1992 Acura Legend with Tag Number YYM9580, that Defendant was travelling at a particular location along I-485, and that Officer Sullivan had personally observed that Defendant was operating his vehicle while not wearing his seatbelt. This information was also heard over the radio by Officer Jonathan Tobbe ("Officer Tobbe"), who was communicating with several officers by both telephone and radio during the surveillance of the residence and who also testified that Officer Sullivan had communicated over the radio his observation that Defendant was not wearing his seatbelt.

As a result of the information communicated to them by Officer Sullivan, Officer Griffin and his partner located and followed Defendant's vehicle on I-485. Officer Griffin

continued to follow Defendant as Defendant exited I-485. While stopped directly behind Defendant's vehicle at a red light, Officer Griffin personally observed that Defendant was not wearing his seatbelt and that the belt "was actually just hanging." Officer Griffin then initiated a traffic stop of Defendant's vehicle. Upon approaching the vehicle, Officer Griffin noticed an odor of marijuana, which he said "was very strong, it made [his] eyes water, it was strong." After determining that Defendant was driving with a "canceled" driver's license, Officer Griffin placed Defendant under arrest and conducted a search of Defendant's vehicle, in which he found the first of the two cases that Defendant had placed in the vehicle, containing what Officer Griffin estimated to be thirty pounds of marijuana.

Defendant was charged in bills of indictment with one count each of trafficking by possessing and trafficking by transporting 50 pounds or more but less than 2,000 pounds of marijuana, a Schedule VI controlled substance under N.C. Gen. Stat. § 90-94(1) — both Level Two trafficking offenses in violation of N.C. Gen. Stat. § 90-95(h)(1)(b) — and with one count of possession with intent to sell or deliver more than one and one-half ounces of marijuana in violation of N.C. Gen. Stat. § 90-95(a)(1).

Defendant filed in Mecklenburg County Superior Court a motion to suppress the "large sum of money" found in his pocket, the suitcases found in the backseat and trunk of his vehicle that were alleged to contain marijuana, and the statements Defendant made to a detective in the VICE and Narcotics Unit of the CMPD in which he "allegedly admitted to possessing the alleged marijuana." In his motion, Defendant argued that the officers who initiated the traffic stop had no articulable facts upon which they could have relied in order to establish a proper basis for stopping Defendant's vehicle. After conducting a hearing, Judge Hugh B. Lewis entered an order denying Defendant's motion.

Following the denial of his motion to suppress, Defendant pled guilty to one count of Level One trafficking in marijuana in violation of N.C. Gen. Stat. § 90-95(h)(1)(a), and the State dismissed the remaining charges. In his plea agreement, Defendant expressly reserved the right to appeal the denial of his motion to suppress. On 13 November 2012, the trial court entered its judgment and Defendant was sentenced to a term of 25 to 30 months imprisonment. Defendant gave timely written notice of appeal.

**Analysis**

Defendant argues on appeal that the trial court erred by

denying his motion to suppress because the officers who initiated the stop of his vehicle did not have reasonable, articulable suspicion to justify an investigatory traffic stop. Alternatively, Defendant argues that the trial court erred by failing to make findings of fact that "resolve the conflicts" in the evidence presented at the hearing on the motion.

"In North Carolina, a defendant's right to pursue an appeal from a criminal conviction is a creation of state statute." *State v. McBride*, 120 N.C. App. 623, 624, 463 S.E.2d 403, 404 (1995), *aff'd per curiam*, 344 N.C. 623, 476 S.E.2d 106 (1996). Under N.C. Gen. Stat. § 15A-1444(e), "a defendant who has entered a plea of guilty is not entitled to appellate review as a matter of right, *unless* the defendant is appealing sentencing issues or the denial of a motion to suppress, or the defendant has made an unsuccessful motion to withdraw the guilty plea." *State v. Pimental*, 153 N.C. App. 69, 73, 568 S.E.2d 867, 870 (emphasis added), *disc. review denied*, 356 N.C. 442, 573 S.E.2d 163 (2002); *see also* N.C. Gen. Stat. § 15A-979(b) (2013) ("An order finally denying a motion to suppress evidence may be reviewed upon an appeal from a judgment of conviction, including a judgment entered upon a plea of guilty."). Nonetheless, "a defendant bears the burden of notifying the [S]tate and the trial court during plea negotiations of the intention to appeal

the denial of a motion to suppress, or the right to do so is waived after a plea of guilty." *McBride*, 120 N.C. App. at 625, 463 S.E.2d at 404. Because Defendant specifically reserved his right to appeal when he entered his guilty plea, his appeal is properly before us.

Our review of a trial court's denial of a motion to suppress is "strictly limited to determining whether the trial judge's underlying findings of fact are supported by competent evidence, in which event they are conclusively binding on appeal, and whether those factual findings in turn support the judge's ultimate conclusions of law." *State v. Cooke*, 306 N.C. 132, 134, 291 S.E.2d 618, 619 (1982). An appellate court "accords great deference" to the trial court in this respect "because it is entrusted with the duty to hear testimony, weigh and resolve any conflicts in the evidence, find the facts, and, then based upon those findings, render a legal decision, in the first instance, as to whether or not a constitutional violation of some kind has occurred." *Id.* at 134, 291 S.E.2d at 619–20. Unchallenged findings of fact "are presumed to be supported by competent evidence and are binding on appeal." *State v. Baker*, 312 N.C. 34, 37, 320 S.E.2d 670, 673 (1984) (internal quotation marks omitted). In the present case, Defendant does not argue that the court's findings of fact fail to support its

conclusions of law. Therefore, we limit our review accordingly.

"[A] traffic stop is constitutional if the officer has a 'reasonable, articulable suspicion that criminal activity is afoot.'" *State v. Barnard*, 362 N.C. 244, 246-47, 658 S.E.2d 643, 645 (quoting *Illinois v. Wardlow*, 528 U.S. 119, 123, 145 L. Ed. 2d 570, 576 (2000)), *cert. denied*, 555 U.S. __, 172 L. Ed. 2d 198 (2008). "This Court has determined that the reasonable suspicion standard requires that '[t]he stop . . . be based on specific and articulable facts, as well as the rational inferences from those facts, as viewed through the eyes of a reasonable, cautious officer, guided by his experience and training.'" *Id.* at 247, 658 S.E.2d at 645 (alteration and omission in original) (quoting *State v. Watkins*, 337 N.C. 437, 441, 446 S.E.2d 67, 70 (1994), *appeal after remand*, 120 N.C. App. 804, 463 S.E.2d 802 (1995)). "Reasonable suspicion is a 'less demanding standard than probable cause and requires a showing considerably less than preponderance of the evidence.'" *Id.* (quoting *Wardlow*, 528 U.S. at 123, 145 L. Ed. 2d at 575-76).

However, "[i]f the officer making the investigatory stop (the second officer) does not have the necessary reasonable suspicion," *State v. Battle*, 109 N.C. App. 367, 370, 427 S.E.2d 156, 159 (1993), the stop "may nonetheless be made if the second officer receives from another officer (the first officer) a

request to stop the vehicle, and if, at the time the request is issued, the first officer possessed a reasonable suspicion that criminal conduct had occurred, was occurring, or was about to occur." *Id.* at 370-71, 427 S.E.2d at 159. Moreover, where there is "no request from the first officer that the second officer stop a vehicle, the collective knowledge of both officers may form the basis for reasonable suspicion by the second officer, if and to the extent the knowledge possessed by the first officer is communicated to the second officer." *Id.* at 371, 427 S.E.2d at 159.

Finally, "[i]n North Carolina an officer may stop and issue a citation to any motorist who he has probable cause to believe has committed a misdemeanor or infraction." *State v. Hamilton*, 125 N.C. App. 396, 400, 481 S.E.2d 98, 100 (internal quotation marks omitted), *appeal dismissed and disc. review denied*, 345 N.C. 757, 485 S.E.2d 302 (1997). Because N.C. Gen. Stat. § 20-135.2A(a) requires that "each occupant of a motor vehicle manufactured with seat belts shall have a seatbelt properly fastened about his or her body at all times when the vehicle is in forward motion on a street or highway in this State," N.C. Gen. Stat. § 20-135.2A(a) (2013), "[a]ny person violating this statute commits an infraction." *Hamilton*, 125 N.C. App. at 400, 481 S.E.2d at 100; *see also* N.C. Gen. Stat. § 20-135.2A(e).

In the present case, the trial court made the following findings of fact:

> 1. That the above-named Defendant was stopped on January 06, 2010, at or near I-485 and University City Blvd. in Mecklenburg County by Officer MA Griffin of the CMPD for failure to wear a seat belt pursuant to N.C. Gen. Stat. § 20-135.2(a)(e) and that Officer Golshani was riding with Officer Griffin.
>
> 2. That prior to stopping the Defendant's vehicle, Officer Griffin received information via radio from CMPD Officer Sullivan, who indicated that the Defendant was driving without his seat belt.
>
> 3. That Officer Sullivan was able to provide Officer Griffin with a description of the Defendant's vehicle, along with a tag number and exact location.
>
> 4. That Officer Griffin was able to locate the Defendant's vehicle based on this information.
>
> 5. That Officer Griffin pulled up behind the Defendant's vehicle when it was stopped at a red light and was able to observe himself that the Defendant was not wearing his seat belt.

The trial court then made the following conclusions of law:

> 1. That this matter is before the court on the Defendant's Motion to Suppress based on violation of the Defendant's Constitutional Rights under the U.S. Constitution and the Constitution of North Carolina[.]

2. That pursuant to State v[.] Styles, 362 N.C. App[.] 412, 665 S.E.2d[] 438, reasonable suspicion existed for Officer Griffin to conduct a traffic stop on the defendant based on his observations that he was not wearing a seat belt as well as the information he received from Officer Sullivan.

3. That an objective standard, rather than a subjective standard, must be applied to determine the reasonableness of police action related to probable cause. State v. McClendon, 350 N.C. 630[,] 517 S.E.2d 128.

4. That, therefore, the traffic stop conducted on [the] vehicle in which the Defendant was driving did not violate his Constitutional rights under the Fourth Amendment proscription against unreasonable seizures.

Our review of the record reveals that competent evidence existed to support the trial court's findings of fact, which support its conclusions of law. Officer Griffin testified that prior to initiating the stop of Defendant's vehicle, he had personally observed that Defendant was not wearing his seatbelt and that the belt "was actually just hanging," both as Defendant was exiting off of I-485 and when the officer was stopped directly behind Defendant at the traffic light at the end of the exit ramp of the interstate. Additionally, Officer Sullivan testified that he, too, observed that Defendant was driving on I-485 without wearing his seatbelt, which information he communicated over the radio to his fellow officers and which

information was heard by and corroborated through the testimony of Officers Griffin and Tobbe. Furthermore, Officers Griffin and Tobbe testified that Officer Sullivan also communicated the description, license plate, and location of Defendant's vehicle, which information enabled Officer Griffin to locate Defendant's vehicle as he travelled along I-485.

A careful review of Defendant's argument on appeal demonstrates that he does not dispute that the record includes this evidence or that such evidence supports the court's findings of fact. Instead, Defendant challenges the credibility of this evidence and argues that a video recording taken from the dashboard-mounted camera in Officer Griffin's patrol car — which was introduced by the State at the hearing on Defendant's motion to suppress — contradicts the testimony given by the officers at the hearing. However, as Defendant concedes, "[w]eighing the credibility of witnesses and resolving conflicts in their testimony is precisely the role of the superior court in ruling on a motion to suppress." *State v. Veazey*, 201 N.C. App. 398, 402, 689 S.E.2d 530, 533 (2009), *disc. review denied*, 363 N.C. 811, 692 S.E.2d 876 (2010).

Nevertheless, Defendant urges this Court to conclude that the dashboard camera video recording indisputably demonstrates that the trial court's findings of fact were not supported by

competent evidence, relying on *Scott v. Harris*, 550 U.S. 372, 167 L. Ed. 2d 686 (2007), for support. In *Scott*, the United States Supreme Court considered the denial of a motion for summary judgment that was brought based on an assertion of qualified immunity. *Id.* at 376, 167 L. Ed. 2d at 691. While reviewing whether the lower courts had properly determined that the movant was not entitled to qualified immunity, the Court stated that "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Id.* at 380, 167 L. Ed. 2d at 694. The Supreme Court proceeded to determine that "Respondent's version of events [wa]s so utterly discredited by the record that no reasonable jury could have believed him," *id.*, and that "[t]he Court of Appeals should not have relied on such visible fiction; it should have viewed the facts in the light depicted by the videotape." *Id.* at 380–81, 167 L. Ed. 2d at 694.

Here, Defendant insists that — as in *Scott* — the video recording taken from Officer Griffin's dashboard camera belies the testimony of both Officer Sullivan and Officer Griffin in two ways. First, Defendant claims that the video recording irrefutably shows that it was too dark for the officers to have

observed that Defendant was not wearing his seatbelt.  Second, Defendant asserts that the transcript of the video recording shows that Officer Griffin was "'trying to come up with' any reason to stop [Defendant]" and that the seatbelt violation that served as the basis for the investigatory stop was pretextual.

With respect to Defendant's second assertion, it has long been recognized that "it is immaterial to Fourth Amendment analysis that the officer may have had ulterior motives for the traffic stop."  *Hamilton*, 125 N.C. App. at 399, 481 S.E.2d at 100 (internal quotation marks omitted); *see also State v. McClendon*, 350 N.C. 630, 635, 517 S.E.2d 128, 131 (1999) ("[P]olice action related to probable cause should be judged in objective terms, not subjective terms.  Provided objective circumstances justify the action taken, any ulterior motive of the officer is immaterial." (internal quotation marks omitted)).  Therefore, Defendant's attempts to question the motives underlying Officer Griffin's investigatory stop of Defendant's vehicle are not relevant to our analysis.

With respect to Defendant's first assertion, upon careful review of the video recording in the record before us, we are not persuaded that this video so irrefutably contradicts the evidence presented to the trial court so as to have rendered the officers' testimony impossible.  Rather, the inferior quality of

the intermittently blurred images from the video recording precludes us from determining whether the night's darkness rendered it impossible for Officers Griffin and Sullivan to see a swinging, unfastened seatbelt in Defendant's vehicle either directly or with the aid of the ambient light from passing cars on the interstate and at the traffic light. Thus, we conclude that *Scott* is factually distinguishable from the present case because, unlike the video recording in *Scott*, the video in the record currently before us did not "so utterly discredit[]" the testimony of the officers upon which the trial court relied in making its findings of fact. *See Scott*, 550 U.S. at 380, 167 L. Ed. 2d at 694; *cf. id.* at 378-79, 167 L. Ed. 2d at 693 ("[R]eading the lower court's opinion, one gets the impression that respondent, rather than fleeing from police, was attempting to pass his driving test . . . . The videotape tells quite a different story.").

Here, the State offered competent evidence that prior to initiating his investigatory stop of Defendant's vehicle, Officer Griffin personally observed that Defendant was not wearing his seatbelt while operating the vehicle, and that Officer Sullivan observed and communicated the same to his fellow officers, including Officer Griffin. Accordingly, we hold the trial court did not err when it determined that Officer

Griffin's investigatory stop of Defendant's vehicle was based on reasonable, articulable suspicion.

Defendant next argues that the trial court's order denying his motion to suppress fails to contain sufficient findings of fact because the court's findings did not address the "material conflict" in the evidence presented by "the conflicting video evidence." However, as discussed above, we are not persuaded that the video recording from Officer Griffin's dashboard camera materially conflicted with the testimony given by the officers at the hearing. Therefore, because no material conflict in the evidence exists, we cannot say that the trial court erred in denying Defendant's motion to suppress.

## Conclusion

For the reasons stated above, we affirm the trial court's order denying Defendant's motion to suppress.

AFFIRMED.

Judges CALABRIA and STROUD concur.

Report per Rule 30(e).